Citation Nr: 1132134 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 09-07 154 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Prior to February 9, 2009, entitlement to a compensable disability rating for the service-connected keloids of the chest.

2. Since February 9, 2009, entitlement to a disability rating higher than 10 percent for the service-connected keloids of the chest.

3. Entitlement to service connection for bilateral hearing loss.

4. Entitlement to service connection for fecal incontinence, to include as secondary to the service-connected hemorrhoids.


REPRESENTATION

Veteran represented by: The American Legion



ATTORNEY FOR THE BOARD

Shauna M. Watkins, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1951 to September 1953.

This appeal comes to the Board of Veterans' Appeals (Board) from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, dated in March 2008, February 2010, and May 2011. In its March 2008 decision, the RO denied the Veteran's claims for an increased rating for keloids of the chest and service connection for fecal incontinence. In its February 2010 decision, the RO denied service connection for bilateral hearing loss. 

In August 2010 the Board remanded the appeal for additional development. The claims have now been returned to the Board for appellate disposition.

Following the Board's remand, in a May 2011 rating decision, the RO increased the disability rating for the Veteran's service-connected keloids of the chest to 10 percent disabling, effective February 9, 2009.

The Board notes that the Veteran filed a timely Notice of Disagreement (NOD) in May 2011 in response to the May 2011 rating decision that increased his disability rating to 10 percent for his service-connected keloids of the chest, effective February 9, 2009. Specifically, in his May 2011 NOD the Veteran disagreed with the effective date assigned for this 10 percent disability rating. However, the Veteran's current appeal already includes the issue of entitlement to an increased rating effective from the date of claim in October 2007. Thus, the Board finds that it is unnecessary to remand this matter for the issuance of a statement of the case. 

Additionally, the Board notes that the Veteran's claims file contains references to a Virtual VA file for this Veteran. This e-file was checked for new or relevant information; however, a review of the e-file revealed that it contained entirely duplicative information, such as past rating decisions, that are already in the claims file.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The issue of entitlement to service connection for keloids on the entire body, with the exception of the shoulders, chest, and back (which are already service-connected), has been raised by the record in a June 2011 statement from the Veteran's representative, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 

The issues of entitlement to service connection for bilateral hearing loss and entitlement to service connection for fecal incontinence are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. Prior to February 9, 2009, the Veteran's keloids of the chest were superficial and painful. 

2. Throughout the entire appeal period, the Veteran's keloids of the chest have been superficial, and have not caused limitation of motion or loss of function in the chest.


CONCLUSIONS OF LAW

1. Prior to February 9, 2009, the criteria for a compensable disability rating of 10 percent for the Veteran's keloids of the chest are met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.7, 4.118, Diagnostic Codes (DCs) 7800, 7801, 7802, 7803, 7804, 7805, 7819 (2008).

2. Throughout the entire appeal period, the criteria for a disability rating higher than 10 percent for the Veteran's keloids of the chest are not met. 38 U.S.C.A. 
§ 1155 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.7, 4.118, DCs 7800, 7801, 7802, 7803, 7804, 7805, 7819 (2008).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Notice and Assistance

Under the applicable law, VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2010).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record: (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and, (3) that the claimant is expected to provide. This notice must be provided prior to an initial unfavorable decision on a claim by the AOJ. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The Board finds that the content requirements of a duty-to-assist notice letter have been fully satisfied. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Letters from the RO dated in November 2007, June 2008, September 2010, and May 2011 provided the Veteran with an explanation of the type of evidence necessary to substantiate his appeal, as well as an explanation of what evidence was to be provided by him and what evidence the VA would attempt to obtain on his behalf. The November 2007, June 2008, and May 2011 letters also provided the Veteran with information concerning the evaluations and effective dates that could be assigned should his appeal be granted, pursuant to Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The duty-to-assist letter dated in November 2007 was provided before the initial RO adjudication of his appeal. After he was provided the additional letters, the RO readjudicated the appeal in the September 2008 Statement of the Case (SOC), in the May 2011 Supplemental SOC (SSOC), and in the May 2011 rating decision - including considering additional evidence received in response to the additional notices and since the initial rating decision at issue. This is important to point out because if there was no VCAA notice provided prior to the initial adjudication of the claim, or for whatever reason the notice provided was inadequate or incomplete, this timing error may be effectively "cured" by providing any necessary notice and then going back and readjudicating the claim, including in a SOC or SSOC, such that the intended purpose of the notice is not frustrated and the Veteran is given ample opportunity to participate effectively in the adjudication of his appeal. In other words, this timing error in the provision of the notice is ultimately inconsequential and, therefore, at most nonprejudicial, i.e., harmless error. See Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007) (Mayfield IV); Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

For all of these reasons, the Board concludes that the appeal may be adjudicated without a remand for further notification.

VA has a duty to assist the Veteran in the development of the appeal. This duty includes assisting the Veteran in the procurement of service treatment records (STRs) and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

Here, the Board finds that all relevant facts have been properly developed, and that all evidence necessary for equitable resolution of the appeal has been obtained. His STRs and post-service treatment records have been obtained. The Board does not have notice of any additional relevant evidence that is available but has not been obtained. He has been afforded VA examinations. The reports of those evaluations contain all findings needed to properly evaluate his disability. 38 C.F.R. § 4.2. For the foregoing reasons, the Board concludes that all reasonable efforts were made by the VA to obtain evidence necessary to substantiate the Veteran's appeal. Therefore, no further assistance to the Veteran with the development of evidence is required.

The Board is also satisfied as to substantial compliance with its August 2010 remand directives in regards to the keloids of the chest claim. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268 (1998). This included scheduling the Veteran for another VA examination - which he had in December 2010, and then readjudicating his appeal in the May 2011 SSOC. 

Increased Rating Claims

Disability evaluations are determined by the application of a schedule of ratings which is based on the average impairment of earning capacity in civil occupations. See 38 U.S.C.A. § 1155. Separate DCs identify the various disabilities. The assignment of a particular DC is dependent on the facts of a particular case. See Butts v. Brown, 5 Vet. App. 532, 538 (1993). One DC may be more appropriate than another based on such factors as an individual's relevant medical history, the current diagnosis, and demonstrated symptomatology. In reviewing the claim for a higher rating, the Board must consider which DC or codes are most appropriate for application in the Veteran's case and provide an explanation for the conclusion. See Tedeschi v. Brown, 7 Vet. App. 411, 414 (1995).

The Board observes that an unappealed rating decision of September 2003 granted service connection for the Veteran's keloids of the chest. While the Veteran's entire history is reviewed when making a disability determination, 38 C.F.R. § 4.1, where service connection has already been established and an increase in the disability rating is at issue, it is a present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994).

The Board notes that during the course of the appeal, in October 2008, the regulations pertaining to the evaluation of the skin were amended, effective October 23, 2008. It is further observed that the regulatory changes only apply to applications received by VA on or after October 23, 2008, or if the Veteran requests review under the clarified criteria. See 73 Fed. Reg. 54708 (Sept. 23, 2008). As neither situation applies in this case, the Board finds the 2008 changes to be inapplicable. Therefore, the criteria that became effective on August 30, 2002, are the only ones that apply in this case. See 67 Fed. Reg. 49,590-49,599 (July 31, 2002).

Throughout the appeal, the Veteran's keloids of the chest have been rated under DCs 7804 and 7819. 38 C.F.R. § 4.118.

DC 7804 provides for a single maximum 10 percent disability rating where a superficial scar is painful on examination. A Note associated with this DC specifies that superficial scars are those not associated with underlying soft tissue damage. 38 C.F.R. § 4.118. 

DC 7819 provides that benign skin neoplasms are rated as disfigurement of the head, face, or neck (DC 7800), scars (DCs 7801, 7802, 7803, 7804, or 7805), or rated on impairment of function. 38 C.F.R. § 4.118. 

The scar at issue is not on the Veteran's head, face, or neck; therefore, DC 7800 does not apply and is not further discussed. 38 C.F.R. § 4.118.

Under DC 7801, scars, other than those on the head, face, or neck, that are deep or that cause limited motion warrant a 10 percent rating if the area or areas exceed 6 square inches (39 sq. cm). In order for a 20 percent rating to be warranted, the area or areas must exceed 12 square inches (77 square centimeters). A Note associated with this DC specifies that a deep scar is one associated with underlying soft tissue damage. 38 C.F.R. § 4.118, DC 7801.

Under DC 7802, scars, other than those on the head, face, or neck, that are superficial and that do not cause limited motion warrant a 10 percent rating if the area or areas exceed 144 square inches (929 sq. cm.). A 10 percent rating is the maximum schedular rating available under DC 7802. 38 C.F.R. § 4.118.

DC 7803 provides a 10 percent rating for a superficial unstable scar. A Note associated with this DC specifies that an unstable scar is one where there is frequent loss of covering of skin over the scar. 38 C.F.R. § 4.118.

Under DC 7805, the rater is instructed to rate the scar based on the limitation of function of the affected part. 38 C.F.R. § 4.118.

Applying the above criteria to the evidence dated prior to February 9, 2009, and giving the Veteran the benefit of the doubt, the Board finds that the Veteran is entitled to a higher rating of 10 percent for his keloids of the chest. Specifically, at a December 2007 VA examination for Aid and Attendance, the Veteran was noted to have multiple keloid-type lesions over his chest. The Veteran reported that the keloids itched and burned at times. During a VA dermatology outpatient treatment visit in January 2008, the Veteran reported that his keloids were pruritic and occasionally hurt. At the February 2008 VA skin examination, the Veteran reported that his keloid scars were sometimes itchy and caused a slight stinging sensation. In regards to his anterior thorax, the examiner noted that the Veteran had six horizontal linear keloid scars that ran between 6 and 15 centimeters in length and were raised, superficial, non-tender, non-indurated, non-ulcerated, hypo-pigmented, atrophic in texture, and that they moved freely with the surrounding skin. In regards to his anterior thorax, the examiner noted that there were four or five annular keloid lesions scattered along the sternal area that were nodular, two to three centimeters in size, firm, raised, superficial, non-tender, non-indurated, non-ulcerated, hyper-pigmented, shiny, and moved freely with the surrounding skin. Therefore, giving the Veteran the benefit of the doubt, the Board finds that the evidence of record establishes that the Veteran's keloids were superficial and painful prior to February 9, 2009 - the requirements for the next higher rating of 10 percent. 38 C.F.R. § 4.118, DC 7804. 

The Board will now consider whether the Veteran is entitled to a higher rating of 20 percent throughout his entire appeal period.
First, the Board notes that the Veteran is not entitled to a higher rating under DCs 7802, 7803, and 7804 because the Veteran is already receiving the maximum schedular rating of 10 percent under these codes. 38 C.F.R. § 4.118.

Second, the Veteran is not entitled to a higher rating of 20 percent under DC 7801. His keloids of the chest have not been shown to be deep; instead, they have been shown to be superficial. Both the February 2008 and the December 2010 VA examiners determined that the Veteran's keloids of the chest were superficial. Additionally, under DCs 7801 and 7805, the Veteran's keloids of the chest have not been shown to cause limitation of motion or limitation of function of the chest to warrant a higher rating. Specifically, the February 2008 VA examiner determined that the keloids of the chest moved freely with the skin. The December 2010 VA examiner determined that the keloids of the chest do not cause limitation of function or limitation of motion of the chest. The VA treatment records do not provide contrary results. Therefore, the Veteran is not entitled to a rating higher than 10 percent for his service-connected keloids of the chest under DCs 7801 or 7805. 38 C.F.R. § 4.118.

In summary, the Veteran's lay testimony concerning the severity of his keloids of the chest is probatively outweighed by the objective medical findings to the contrary. See Grottveit v. Brown, 5 Vet. App. 91, 93 (1993); Espiritu v. Derwinski, 2 Vet. App. 492 494-95 (1991); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Barr v. Nicholson, 21 Vet. App. 303, 310 (2007). See also 38 C.F.R. § 3.159(a)(2); Rucker v. Brown, 10 Vet. App. 67 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")). See, too, Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006) (indicating the Board retains the discretion to make credibility determinations and otherwise weigh the evidence submitted, including lay evidence).

The Veteran has never met the requirements for a higher disability rating since one year prior to filing his increased rating claim, so the Board cannot "stage" this rating under Hart v. Mansfield, 21 Vet. App. 505 (2007).

The possibility of an extra-schedular rating has been considered. However, the service-connected disability does not present such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2010). The symptoms associated with the Veteran's disability appear to fit squarely within the applicable rating criteria. The Veteran's main symptom is pain, which is expressly considered by the rating criteria in determining the severity of the disability. As such, extra-schedular consideration is not warranted. Thun v. Peake, 22 Vet. App. 111 (2008).

For these reasons and bases, the preponderance of the evidence is against the Veteran's appeal regarding his keloids of the chest - in turn meaning there is no reasonable doubt to resolve in his favor and his appeal must be denied. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3; Alemany v. Brown, 9 Vet. App. 518, 519 (1996).


ORDER

Prior to February 9, 2009, a 10 percent disability rating, but not greater, for the keloids of the chest is granted, subject to the statutes and regulations governing the payment of monetary benefits.

Throughout the entire appeal period, a disability evaluation in excess of 10 percent for the Veteran's keloids of the chest is denied.





REMAND

Unfortunately, a remand is required in this case. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's appeal so that he is afforded every possible consideration.

In regards to the Veteran's bilateral hearing loss claim, the claims file currently contains an audiological graphical report dated in October 2009 from Dr. C.D., a private physician. This report has not been converted to the appropriate numerical form. The United States Court of Appeals for Veterans Claims (Court) has held that interpretation of a graphical audiogram is a finding of fact, to be made by the Board in the first instance. Kelly v. Brown, 7 Vet. App. 471 (1995). If the Board is unable to interpret the graphical audiogram due to unclear results or several possible interpretations, then the Board must remand the results for translation by an appropriate specialist. Id.; see also Ponder v. Shinseki, No. 09-0881, 2010 WL 4241571, 2 (Oct. 28, 2010) (nonprecedential) (noting that Board's failure to make factual findings by interpreting the audiograph resulted in the Board overlooking relevant audiometric data and was remandable error); Box v. Shinseki, No. 08-3038, 2010 WL 2640581, 3 (June 30, 2010) (nonprecedential) (indicating the Board had a duty to interpret a private audiological examination or if it could not do so to seek clarification); Woolard v. Peake, No. 06-2318, 2008 WL 4224455, 1 (Aug. 8, 2008) (nonprecedential) (indicating the Board did not provide adequate reasons and bases to support a rejection of a private audiological examination when the results were conveyed on a straightforward graph). Here, the Board finds that the graphical representation is unclear and may have several possible interpretations. Thus, the Board is unable to interpret the graph and further medical inquiry is necessary for a proper finding of fact to be rendered. 

In regards to his fecal incontinence claim, the Board previously remanded this claim for the RO/AMC to obtain the Veteran's private treatment records for Dr. E. in Mobile, Alabama. The claims file currently contains an authorization from the Veteran dated in September 2010 to obtain these records. However, the claims file contains no evidence of the RO/AMC's efforts to obtain these records. Therefore, the Board finds that the development directed by the Board in its last remand was not accomplished. Where the remand orders of the Board or the Courts are not complied with, the Board errs as a matter of law when it fails to ensure compliance. Stegall v. West, 11 Vet. App. 268, 271 (1998). Therefore, the Board must once again remand this claim for the requested action to be completed.

Accordingly, the case is REMANDED for the following actions:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2010). Expedited handling is requested.)

1. With respect to the October 2009 private audiological report from Dr. C.D. that is currently in graphical format, the RO/AMC should contact the Veteran and obtain the appropriate release form, including contact information, authorizing VA to request records from Dr. C.D. 

2. After obtaining the necessary authorization, the RO/AMC should contact Dr. C.D. and inquire as to whether the October 2009 audiological examination (which is in graphical format) was conducted by a state-licensed audiologist. 

The RO/AMC should also ask that the medical provider to translate the graphical displays of the audiogram test results contained in the October 2009 private audiological examination to an appropriate numerical form. Specifically, the private provider should be asked to provide the specific puretone thresholds for each ear at the four frequencies (1,000, 2,000, 3,000 and 4,000 Hertz). All records and/or responses received should be associated with the claims file.

If no response is received from the private provider, the Veteran should be informed of this fact in a written letter.

3. Using the Veteran's medical records release form dated in September 2010, the RO/AMC should obtain copies of all private treatment records from Dr. E., a surgeon in Mobile, Alabama. 

All attempts to obtain these records must be documented in the claims file. If no medical records are located, this must be documented in the claims file and the Veteran must be notified of this fact in a written letter.

4. Thereafter, readjudicate the Veteran's claims on appeal. If the claims remain denied, provide the Veteran and his representative with a SSOC and allow them an appropriate time for response.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. 
§§ 5109B, 7112 (West 2002).




______________________________________________
Michael J. Skaltsounis
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs