Citation Nr: 1602917 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 08-11 821 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to an initial rating in excess of 30 percent for Charcot's foot disease. 

2. Entitlement to an initial compensable disability rating for bilateral hearing loss. 

3. Entitlement to special monthly compensation (SMC) based on the need for regular aid and attendance of another. 


REPRESENTATION

Appellant represented by: Robert V. Chisholm, Attorney


ATTORNEY FOR THE BOARD

J.R. Bryant



INTRODUCTION

The Veteran served in the U.S. Army from January 1969 to April 1970.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a rating decisions issued in September 2006 and August 2013, by the Department of Veterans Affairs (VA) Regional Office (RO) in New York, New York. 

In February 2014, the Board remanded the Charcot's foot disease and SMC claims for issuance of a statement of the case (SOC) and remanded the hearing loss claim for additional development.

The issues of entitlement to an initial disability rating greater than 30 percent for Charcot's foot disease and entitlement to SMC are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

1. Prior to March 13, 2015, the Veteran's hearing loss did not meet the audiometric testing requirements for a compensable rating.

2. VA audiometric testing on March 13, 2015, shows an average 61-decibel loss, with a speech recognition score of 64 percent, in the right ear (level VI); and, for the left ear, an average 60-decibel loss with a speech recognition score of 72 percent (level V). An exceptional pattern of hearing impairment is not indicated.



 (CONTINUED ON NEXT PAGE)


CONCLUSIONS OF LAW

1. The criteria for a compensable rating for bilateral hearing loss are not met for the period prior to March 13, 2015. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(West 2014); 38 C.F.R. §§ 3.102, 4.85, 4.86 Diagnostic Code (DC) 6100 (2015).

2. The criteria for a 20 percent rating, but no more, for bilateral hearing loss are met beginning on March 13, 2015. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(West 2014); 38 C.F.R. §§ 3.102, 4.85, 4.86 Diagnostic Code (DC) 6100 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See e.g. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2015). For the increased rating issue decided in the instant document, VA provided adequate notice in a letter sent to the Veteran in March 2004.

VA has also satisfied its duty to assist the Veteran in the development of his claim. Service treatment records and pertinent post-service records have been obtained and are viewable on the Virtual VA and Veterans Management Benefits System electronic file systems. The Veteran has also submitted potentially relevant documents and argument in support of his claim, including personal statements. The Board finds that there is no additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. Green v. Derwinski, 1 Vet. App. 121 (1991). Here, the Veteran was afforded VA compensation examinations in October 2008, August 2009, and March 2015 assessing and reassessing the severity of his service-connected hearing loss. These examination reports adequately document the symptoms and functional effects of the service-connected hearing loss and so provide the information necessary for the Board to evaluate this service-connected disability. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). See also Martinak v. Nicholson, 21 Vet. App. 447, 454 (2007) (A VA audiology examiner is required to fully describe the functional effects caused by a hearing disability). Thus, the Board finds that VA has satisfied its duty to assist the Veteran in apprising him as to the evidence needed, and in obtaining evidence pertinent to his claim under the VCAA. 

Law and Analysis

The Veteran is seeking a higher disability rating for his service-connected bilateral hearing loss.

Disability ratings are determined by comparing a veteran's present symptomatology with the criteria set forth in the VA Schedule for Rating Disabilities, which is based upon average impairment in earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4 (2015). When a question arises as to which of two ratings applies under a particular diagnostic code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt is resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

The Veteran's entire history is considered when assigning disability ratings. 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). A review of the recorded history of a disability is necessary in order to make an accurate rating. 38 C.F.R. §§ 4.2, 4.41 (2015). The regulations do not give past medical reports precedence over current findings where such current findings are adequate and relevant to the rating issue. Francisco v. Brown, 7 Vet. App. 55 (1994); Powell v. West, 13 Vet. App. 31 (1999). The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran's bilateral hearing loss is currently rated as noncompensably disabling under DC 6100. Hearing loss is evaluated under DC 6100, which sets out the criteria for evaluating hearing impairment using puretone threshold averages and speech discrimination scores. Numeric designations are assigned based upon a mechanical use of tables found in 38 C.F.R. § 4.85. See Acevedo-Escobar v. West, 12 Vet. App. 9, 10 (1998); Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992).

Audiometric results are matched on Table VI to find the numeric designation. Then, the designations are matched with Table VII to find the percentage evaluation to be assigned for the hearing impairment. To evaluate the degree of disability for service-connected hearing loss, the Rating Schedule establishes 11 auditory acuity levels, designated from Level I for essentially normal acuity, through Level XI for profound deafness. 38 C.F.R. § 4.85. 

The provisions of section 4.86 address exceptional patterns of hearing loss which are identified when each of the puretone thresholds at 1000, 2000, 3000, and 4000 hertz (Hz) is 55 decibels or more, or when the puretone threshold is 30 decibels or less at 1000 Hz, and 70 decibels or more at 2000 Hz. 38 C.F.R. § 4.86.

Turning to the evidence of record, an October 2001 VA audiology note shows the Veteran was noted to have mild sensorineural hearing loss through 2000 Hz, sloping to a moderate to moderately severe sensorineural hearing loss thereafter bilaterally. Speech discrimination scores were described as excellent at 100 percent. Unfortunately, the actual audiometric data were not recorded so the rating tables cannot be applied to these findings and the Board cannot find the Veteran is entitled to a compensable disability rating based on this report. 

The Veteran was seen in July 2002 by the Wilks Hearing Center, Inc and submitted an uninterpreted graphic representation of audiometric data. The results of the audiological evaluation are clear and the Board may review them. See Ponder v. Shinseki, No. 09-0881, 2010 WL 4241571, at 3 (Vet. App. Oct. 28, 2010) (unpublished single-judge disposition) (noting that in Kelly v. Brown, 7 Vet. App. 471 (1995), the Court determined that it could not interpret the results of an audiograph because interpretation required a factual finding, which was not the role of the Court in the first instance; the Board, however, was empowered to make factual findings in the first instance); see also Bethea v. Derwinski, 2 Vet. App. 252, 254 (1992) (a non-precedential decision may be cited for any persuasiveness or reasoning it contains). Accordingly, based on the reasoning of Ponder, the Board has proceeded with an effort to make a reasonable interpretation of the lay-readable audiometric results.

On audiological evaluation, pure tone thresholds, in decibels, were:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
25
30
50
60
LEFT
20
25
30
60
70

The Veteran had average puretone thresholds of 41.25 in the right ear, and 46.25 in the left ear; and speech discrimination scores of 84 percent in the right ear and 92 percent in the left ear. Applying these results to the Rating Schedule reveals a numeric designation of Level II auditory acuity in the right ear and Level I in the left ear. See 38 C.F.R. § 4.85, Table VI. The point of intersection on Table VII reflects a level of hearing loss consistent with a noncompensable disability rating. Unfortunately, it is not clear as to whether testing was in line with 38 C.F.R. § 4.85, to include whether a Maryland CNC controlled speech discrimination test was utilized. Thus, the Board must find that this test is not valid for rating purposes.

The record includes two additional uninterpreted graphic representation of private audiometric data from 2006, which the Board, as fact finder, may interpret. See Audiological Evaluations from S.P. Hersh, M.D., dated March 26, 2006 and June 27, 2007. The March 2006 audiometric testing shows pure tone thresholds, in decibels, were:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
20
45
X
70
LEFT
30
30
50
X
85

However, the report does not otherwise conform to VA's requirements for evaluating hearing impairment under the schedular criteria, in that the numerical values for pure tone results at the frequency for 3000 Hz were not reported. Also this report includes speech discrimination scores of 100 percent for both ears. However, there is no indication that the Maryland CNC controlled speech discrimination test was utilized to generate these scores. 38 C.F.R. § 4.85(a). This test is also not valid for rating purposes. 

The June 2007 audiometric testing shows pure tone thresholds, in decibels, were:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
20
40
60
65
LEFT
30
25
40
65
80

The Veteran had average puretone thresholds of 46.25 in the right ear, and 46.25 in the left ear; and speech discrimination scores of 80 percent in the right ear and 84 percent in the left ear. Applying these results to the Rating Schedule reveals a numeric designation of Level III auditory acuity in the right ear and II in the left ear. See 38 C.F.R. § 4.85, Table VI. The point of intersection on Table VII reflects a level of hearing loss consistent with a noncompensable disability rating. Again, it is not clear as to whether testing was in line with 38 C.F.R. § 4.85, to include whether a Maryland CNC controlled speech discrimination test was utilized. Thus, this test is not valid for rating purposes. 

The Veteran underwent a VA examination in April 2008. On audiological evaluation, pure tone thresholds, in decibels, were:




HERTZ



500
1000
2000
3000
4000
RIGHT
25
35
55
55
55
LEFT
25
35
55
60
65

The Veteran had average puretone thresholds of 50 in the right ear, and 53.75 in the left ear; and speech discrimination scores of 68 percent in the right ear and 64 percent in the left ear. The Board notes that these speech recognition scores are lower than those found in July 2002, March 2006, and June 2007 and the findings suggest a 20 percent evaluation. However this report also specifically indicates that these scores were obtained using the CIDW-22 word list, rather than the Maryland CNC word list that is required by regulation. 38 C.F.R. § 4.85(a). Therefore, the report cannot be used in deciding whether a compensable evaluation for bilateral hearing loss is warranted. 

After being fitted for hearing aids in May 2008, the Veteran underwent additional VA audiometric testing in October 2008 and August 2009, with findings compatible with a noncompensable disability rating. The October 2008 audiometric testing shows an average of the pure tone thresholds between 1000-4000 Hz of 49 in the right ear and 56 in the left ear. Speech recognition ability was 76 percent in the right ear and 94 percent in the left ear. Using Table VI at 38 C.F.R. § 4.85, the Veteran receives a numeric designation of Level III for the right ear and Level I for the left ear. The August 2009 audiometric testing revealed average pure tone thresholds between 1000-4000 Hz of 44 in the right ear and 54 in the left ear. Speech recognition ability was 80 percent in the right ear and 88 percent in the left ear. Using Table VI at 38 C.F.R. § 4.85, the Veteran receives a numeric designation of Level I for the right ear and Level II for the left ear. 

The Veteran was most recently examined by VA in March 2015. The results of this audiogram show an average puretone threshold of 61 decibels for the right ear and 60 for the left. Speech audiometry revealed speech recognition ability of 64 percent in the right ear and 72 percent in the left ear. Exceptional patterns of hearing impairment are not indicated. These audiometric findings result in a numeric designation of Level VI auditory acuity in the right hear and Level V in the left ear. See 38 C.F.R. § 4.85, Table VI. The point of intersection on Table VII reflects a level of hearing loss consistent with a 20 percent disability rating. See 38 C.F.R. § 4.85.

The audiologist concluded the Veteran has a mild to severe sloping hearing loss with fair word understanding ability in both ears. Although his hearing loss impacts his ability to understand speech, particularly in noisy environments, with the use of good communication strategies (looking at person talking, being at close distance with person talking, having others get his attention before talking to him, etc), a quiet environment, and hearing aids (which veteran has and he is eligible for new ones for which he has an appt to get) he should be able to communicate in most listening environments effectively conversations and enjoyment of the TV. 

With regard to employability, the examiner noted that hearing loss alone should not be a barrier to a wide range of employment settings. Although hearing loss can negatively affect everyday communication, individuals with hearing loss do function well in most occupational settings, which is especially true if reasonable accommodations are provided. The Veteran's hearing loss would not impact his ability for physical employment or sedentary employment. This is not to say that his hearing loss would not cause problems with specific vocations, in that the Veteran may have trouble working well in noisy environments due to sensitivity to loud sounds and in environments which require him to use ear protection which may further the progression of his hearing loss or in jobs which require a great deal of attention to high pitched sounds (such as monitoring medical equipment or other "beeps and pings").

For the period prior to March 13, 2015, the evidence does not support a compensable rating for the Veteran's bilateral hearing loss. Application of the rating schedule to the audiometric results does not warrant a higher rating. However, for the period beginning on March 13, 2015, resolving all doubt in the Veteran's favor, the Board finds that the evidence of record supports a 20 percent disability rating. A higher evaluation is not warranted as there is no medical evidence to support such a rating for this period. The Veteran's disability must be evaluated on the objective findings demonstrated during audiological examination. Hearing loss involves a mechanical application of the rating schedule to numeric designations assigned to official auditory results. The fact that hearing acuity is less than optimal does not, by itself, establish entitlement to a higher disability rating. A rating greater than 20 percent can be awarded only when loss of hearing has reached a specified measurable level. That level of disability has not been demonstrated in the present case. 

The Board has carefully considered the Veteran's contentions in making this decision. However, inasmuch as the objective evidence does not otherwise substantiate the subjective complaints, his assertions do not suffice to assign higher disability ratings for his service-connected hearing loss. In this case, the current level of disability shown is encompassed by the rating assigned and with due consideration to the provision of 38 C.F.R. § 4.7, a higher evaluation is not warranted. 

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. 

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. 

Here, the schedular ratings are adequate. Evaluations in excess of the one assigned are provided for certain manifestations of the service-connected bilateral hearing loss, but the medical evidence reflects that those manifestations are not present here. Additionally, the diagnostic criteria adequately describe the severity and symptomatology of the Veteran's disorder in that the ratings are intended to compensate for exactly the symptoms the Veteran has reported, difficulty hearing, including difficulty hearing people talking. As the rating schedule is adequate to evaluate the disability, referral for extraschedular consideration is not in order.

Thus, for the reasons discussed herein, and applying the benefit of the doubt doctrine, the Board finds that the Veteran's hearing loss more nearly approximates a 20 percent disability rating, but no higher for the period since March 13, 2015, the date of the VA examination report, and a noncompensable evaluation prior to this date. Fenderson, supra.


ORDER

A compensable rating for bilateral hearing loss for the period prior to March 13, 2015, is denied.

A 20 percent disability rating, but not higher, for bilateral hearing loss is granted beginning on March 13, 2015, subject to the statutes and regulations governing the payment of monetary benefits.


REMAND

The Veteran contends that his service-connected Charcot's foot disease is more disabling than the current 30 percent evaluation reflects. He asserts, and the medical evidence suggests, that this disability may have increased in severity. 

Review of the record shows, the Veteran underwent an outpatient procedure on his left foot (partial excision of the cuboid as well as the fourth and fifth metatarsals) in June 2014. Prior to that, his most recent VA examination for his Charcot's foot disease was in November 2012. In light of surgery since then, the Board finds that a remand is necessary to afford the Veteran a new VA examination. Palczewski v. Nicholson, 21 Vet. App. 174, 181 (2007); Snuffer v. Gober, 10 Vet. App. 400, 403 (1997); VAOPGCPREC 11-95 (1995) (VA examination required in increased rating claim where Veteran asserts condition worsened since most recent VA examination). 

Also since the Veteran's disability picture is unresolved, the claim for SMC based on aid and attendance of another is inextricably intertwined with the increased rating claim. The appropriate remedy where a pending claim is inextricably intertwined with a claim currently on appeal is to remand the claim on appeal pending the adjudication of the inextricably intertwined claim. Harris v. Derwinski, 1 Vet. App. 180 (1991) (two or more issues are inextricably intertwined if one claim could have significant impact on the other). Thus, adjudication of this issue must be deferred until after completion of the actions requested below.

The Board also notes that in an affidavit submitted in June 2014, he expressed his belief that he essentially requires someone to stay with him at all times because of his service-connected disabilities. He argues that the combination of his service-connected Charcot's foot disease and diabetes makes it impossible to manage his daily routines independently and that he requires assistance from his wife to manage his day-to-day activities and all of his healthcare needs. He has also submitted a statement from his wife, a registered nurse, indicating that due to his service-connected diabetes and residuals he is unable to care for himself. She reports that assists the Veteran in all of his daily hygiene, meal preparation, and medication administration and management. She also has to help the Veteran in and out of the car and a wheelchair has been purchased for the Veteran as he has fallen several times due to his unsteady gait and weakness. 

So while in remand status, the Veteran should also be provided an aid and attendance examination to determine whether he is entitled to SMC based on the need for regular aid and attendance of another due to his service-connected disabilities. 

Accordingly, the case is REMANDED for the following action:

1. Obtain all clinical records, both VA and non-VA, pertaining to treatment of the Veteran that are not already in the claims file.

2. Then, schedule the Veteran for an appropriate VA examinations to determine the current degree of severity of his Charcot's foot disease. The claims file must be made available to the examine and a notation that this record review took place should be included in the evaluation report. All indicated tests and studies, including X-rays, should be performed, and the examiner should review the results of any testing prior to completing the report. The examination report should include discussion of the Veteran's documented medical history and assertions. The examiner should set forth all examination findings, together with the rationale for the comments and opinions expressed.

The examiner should then:

a) describe all pertinent symptomatology and findings associated with the Veteran's service-connected Charcot's foot disease. 

b) indicate whether the Veteran's Charcot's foot disease disability is best described as mild, moderate, moderately severe, or severe. He/She should specifically indicate whether the Charcot's foot disease results in a loss of use of foot.

3. Thereafter, schedule the Veteran for a special Aid and Attendance examination. The claims folder must be made available to the examiner for review of the case, and the examination report should include discussion of the Veteran's documented medical history and assertions. A notation to the effect that this record review took place should be included in the report. 

The examiner should describe the extent to which functional impairment, solely as a result of the Veteran's service-connected disabilities (diabetes mellitus with diabetic retinopathy and erectile dysfunction; diabetic neuropathy of the upper and lower extremities; Charcot foot disease; pilonidal sinus; hypertension; tinnitus; bilateral hearing loss; and a skin condition associated with diabetes mellitus), render him unable to perform daily self-care functions on a regular basis. Specifically the examiner must consider whether, in light of the Veteran's service-connected disabilities, he is able to: 

* dress and undress himself; 
* keep himself clean and presentable; 
* adjust any prosthetic or orthopedic appliances; 
* feed himself (to include preparation of meals) through loss of coordination of upper extremities or extreme weakness; 
* use the toilet independently; or, 
* is a danger to himself or others as a result of the inherent hazards or dangers of his daily environment. 

It is not required that all of the disabling conditions enumerated above be found to exist before a favorable evaluation may be made; the particular personal functions which the claimant is unable to perform must be considered in connection with his/her condition as a whole. The examiner must observe the Veteran's abilities to perform these tasks, and comment accordingly. 

The examiner must be mindful that the need for aid and attendance need only be regular, not constant, for an affirmative opinion to be provided. In addition, the examiner must address whether the Veteran has lost use of his lower extremities.

4. After completing the requested actions, and any additional notification and/or development deemed warranted, the AOJ should readjudicate the claims. If any benefit sought is not granted in full, issue the Veteran and his representative a supplemental statement of the case and provide the Veteran an opportunity to respond before returning the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims (Court) for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
GAYLE E. STROMMEN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs