**Gene M. KELLY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–1286.

United States Court of Veterans Appeals.

March 27, 1995.

Gene M. Kelly, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Adrienne Koerber, Deputy Asst. Gen. Counsel, and John D. Lindsay, Jr., Washington, DC, were on the brief for the appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Judges.

IVERS, Judge, filed the opinion of the Court. STEINBERG, Judge, filed a concurring opinion.

IVERS, Judge:

Gene Kelly appeals from a July 8, 1992, Board of Veterans' Appeals (BVA or Board) decision which denied his claim for service connection for hearing loss and tinnitus. *Gene M. Kelly,* BVA 92–____ (July 8, 1992). The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). The appellant filed a brief. The Secretary filed a brief and an amended brief. For the reasons set forth below, the Court will vacate the decision of the BVA and will remand the case for further proceedings consistent with this opinion.

## I. FACTS

The appellant served in the United States Air Force from August 1969 to August 1973, with a tour of duty in the Republic of Vietnam. R. at 11, 31. No hearing abnormalities were noted on his induction physical examination. R. at 13–15. His entrance examination audiometer readings were 10/–5/5/0 (right ear) and 15/0/5/5 (left ear) at the 500/1000/2000/4000 hertz levels. R. at 16. On an audiogram in March 1973, it was noted that the primary noise exposure was from generators and air conditioners and that ear protection was not worn. R. at 21. The threshold hearing levels in a March 1973 examination were reported as: 15/15/35/25/30/35 (right ear) and 15/15/25/25/25/40 (left ear) at the 500/1000/2000/3000/4000/6000 hertz levels. R. at 21, 23. The appellant noted on a physical examination in April 1973 that he had "ear, nose, or throat trouble." R. at 24. The examiner noted that "E[ar] N[ose] T[hroat] trouble refers to occasional sore throats...." R. at 25. The April 1973 separation examination audiometer readings were 15/20/20/15/25 (right ear) and 20/25/25/25/40 (left ear) at the 1000/2000/3000/4000/6000 hertz levels. R. at 23.

In November 1990 the appellant filed a Veteran's Application for Compensation or Pension for hearing loss and tinnitus. R. at 32. Tinnitus is a ringing, buzzing noise in the ears. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1725 (27th ed. 1988). In February 1991 a VA regional office (RO) denied the claim for service connection. R. at 36. The appellant filed a Notice of Disagreement (NOD), and submitted a letter dated April 1991 from his physician, Dr. Brent Laughlin, stating:

Attached you will find records indicating Mr. Kelly's audiometric data while he was in the armed forces. My interpretation of the data is that his hearing was normal in August of 1969 and that he has showed a significant decrease in hearing in both ears in May of 1973. This appears to have occurred exactly during the time that he was involved in the armed forces and therefore can be attributed to his duty in the armed services.

R. at 40. The RO reviewed Dr. Laughlin's letter, but continued the denial because the appellant had not met the criteria for consideration for service connection at the time of discharge or within the one-year presumption period. R. at 46. The appellant filed an NOD in May 1991. R. at 41. A Statement of the Case (SOC) was issued. R. at 44. An appeal was filed with the Board, stating that the appellant worked in a "high noise hazard environment" and that he "suffered a hearing loss" as a result of the noise. He requested a copy of his August 1973 hearing examination and stated that he had been supplied only with test results from March 1973 and that he had had an "additional five months of exposure to high noise" which could have

caused additional hearing loss. R. at 50. A supplemental SOC was issued. R. at 54.

The appellant was examined by an audiologist, Stanley Lang, PhD., who conducted hearing tests in December 1991. Dr. Lang provided a graph of the testing results rather than numerical findings. R. at 58. The hearing levels reported by Dr. Lang appear to be 10/20/25/25/25 (right ear) and 15/20/30/35/30 (left ear) (these interpretations are approximations from the graph) at the 500/1000/2000/3000/4000 hertz levels, and "word recognition" was reported at 88%. R. at 58. The appellant was diagnosed with "mild to moderate high frequency sensorineural loss secondary to noise trauma" (left ear) and "mild high frequency sensorineural loss secondary to noise trauma" (right ear). R. at 57. Dr. Lang listed tinnitus under "impressions and recommendations" but not in his "summary." R. at 57. In addition, Dr. Lang noted that "there is very little, if any significant change in hearing sensitivity since his tenure in the service and thus it [is] my opinion that his hearing loss, even though mild, is the result of his noise exposure during the military." R. at 58. The appellant testified under oath at a BVA hearing in March 1992 that he was exposed to excessive noise which began in basic training (R. at 65), that he worked in areas without any soundproofing (R. at 76), that he became aware of losing his hearing in 1973 and of a ringing in his ears that had remained constant since 1973 (R. at 65, 67). He also testified that his hearing loss "meets the criteria for service connection contained in 38 C.F.R. [§§] 312 and 313 . . . ." R. at 75. In July 1992 the BVA denied service connection for hearing loss and tinnitus. *Kelly*, BVA 92-____, at 5–6. The BVA did not deny that the appellant had had a decrease in auditory acuity; however, the BVA stated that "the degree of impairment identified is insufficient to be designated abnormal for VA purposes per 38 C.F.R. § 3.385." *Id.* at 5. Regarding the tinnitus, the BVA noted that the appellant had had a gap of 18 years between his military service and the recorded onset of any problems with tinnitus and stated, "[T]he tinnitus initially noted in 1991 is unrelated to the veteran's period of active duty." *Id.*

The appellant filed a timely appeal with this Court.

## II. ANALYSIS

Pursuant to 38 U.S.C. § 7104(d)(1), a final decision of the Board must include "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record. . . ." This Court has held "that the BVA [must] articulate with reasonable clarity its 'reasons or bases' for decisions, and in order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." *Gabrielson v. Brown*, 7 Vet.App. 36, 39–40 (1994); *see Masors v. Derwinski*, 2 Vet.App. 181, 188 (1992); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). Where the Board fails to fulfill this duty, the Court is precluded from effectively reviewing the adjudication. *Meeks v. Brown*, 5 Vet. App. 284, 288 (1993); *Browder v. Brown*, 5 Vet.App. 268, 272 (1993). For the reasons set forth below, the Court holds that the BVA did not provide an adequate statement of "reasons or bases" for denying the veteran's claim based on all the evidence presented.

During the pendency of this appeal, the Secretary revised 38 C.F.R. § 3.385. The Court has stated that where the law or regulation changes during the pendency of a case, the version most favorable to the appellant will generally be applied. *See West v. Brown*, 7 Vet.App. 70, 76 (1994), *Hayes v. Brown*, 5 Vet.App. 60, 66–67 (1993), *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991). This Court has recently held that the amendment of section 3.385 resulted in no substantive change in the effect of the regulation. *Heuer v. Brown*, 7 Vet.App. 379, 385 (1995). The Court examined the supplementary information provided with the proposed amendment in the Federal Register and noted:

> The supplementary information states expressly that the amended § 3.385 was not intended to change the minimum criteria for hearing loss for VA purposes; rather,

the intent was to clarify that what was being defined was when VA would recognize hearing loss as a disability and that the establishment of service connection for hearing loss is controlled by the statutes and regulations regarding establishment of service connection in general.

*Id.* at 386.

The appellant provided evidence consisting of his audiometer readings from the entrance examination, two audiometer readings from March and April 1973, Dr. Lang's and Dr. Laughlin's interpretation of the test results and his in-service tests, and Dr. Lang's testing results from December 1991. The appellant argues that following the April 1973 audiometer reading, he continued his military duties for an additional five months, which also adversely affected his hearing since the noise exposure continued. The appellant submitted expert evidence that he had suffered a noncompensable level of increased hearing loss during service as a result of acoustic trauma, and lay testimony that he had complained of constant ringing in both ears and that he had not had any noise exposure since his military service. R. at 57–58.

The Court holds that the BVA erred in its July 1992 decision because it failed to provide an adequate statement of reasons or bases for the rejection of material evidence provided on behalf of the appellant. The appellant provided the expert opinions of his treating physicians, Drs. Laughlin and Lang. Dr. Lang provided a written diagnosis of the appellant's hearing condition and a copy of an audiogram that he conducted. However, Dr. Lang did not provide numerical results for his testing. Instead, he provided a graph comparing the appellant's current condition with his audiograph results during service. The Court is unable to interpret the results of this graph and, therefore, cannot determine whether the Board accurately applied the standards of the regulation. Interpretation of Dr. Lang's report requires a factual finding. *Gilbert,* 1 Vet.App. at 56–57. Thus, the Court is unable to review the record without engaging in fact-finding, which is not the role of this Court in the first instance. *Id.* at 52–53; *Stegman v. Derwinski,* 3 Vet.

App. 228, 229–30 (1992). In addition, the BVA failed to discuss the results of the speech recognition score set forth in Dr. Lang's report and its relevance or lack thereof to the appellant's hearing loss within the section 3.385 standards, or to seek clarification as to the test used to obtain the speech recognition score. Similarly, from Dr. Lang's examination, it is unclear whether there is a current diagnosis for tinnitus. Therefore, this matter must be readjudicated.

The case will be remanded to the BVA. On remand, the BVA must fulfill its duty to assist the appellant under 38 U.S.C. § 5107(a) by ordering a thorough hearing examination to evaluate the appellant's hearing loss and tinnitus. *See* 38 C.F.R. § 3.159 (1994); *Tripp v. Derwinski,* 3 Vet.App. 173, 175 (1992); *Colvin v. Derwinski,* 1 Vet.App. 171 (1991); *Cousino v. Derwinski,* 1 Vet.App. 536, 540 (1991); *Littke v. Derwinski,* 1 Vet. App. 90, 92 (1990); *Moore v. Derwinski,* 1 Vet.App. 401, 405–06 (1991). The results of that examination should include an accurate assessment of the appellant's current hearing loss and a determination as to the correlation, if any, between the appellant's hearing loss and any current tinnitus and his military service.

### III. CONCLUSION

For the reasons stated above, the July 8, 1992, decision of the BVA is VACATED and the case is REMANDED for readjudication consistent with this opinion.

STEINBERG, *Judge,* concurring:

I join in the Court's conclusion that the case should be remanded for further adjudication because of an inadequate statement of reasons or bases under 38 U.S.C. § 7104(d)(1) in the Board of Veterans' Appeals (Board) decision, and for fulfillment of the duty to assist under 38 U.S.C. 5107(a). I write separately to clarify the route by which I reach that conclusion.

Under the Court's binding precedents, a claim must be well grounded before the reasons-or-bases requirement attaches to the Board's decision on the merits of the claim and before the Secretary's duty to assist

arises. *See Tirpak v. Derwinski*, 2 Vet.App. 609, 610–11 (1992) (Secretary's motion to remand Board decision due to inadequate statement of reasons or bases denied because claim was not well grounded); *Grivois v. Brown*, 6 Vet.App. 136, 140 (1994) ("no duty to assist arises absent a well-grounded claim"); *see also Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990) (when Board finds claim not well grounded, Board must provide adequate statement of reasons or bases for that non-merits determination).

Here, the veteran seeks entitlement to service connection for hearing loss and tinnitus. Service connection for disability compensation purposes will be awarded to a veteran who served on active duty during a period of war or during a post-December 31, 1946, peacetime period, for any disease or injury that was incurred in or aggravated by a veteran's active service or for certain diseases initially manifested to a degree of 10% or more within specified periods of one year or more after the date of separation from service. *See* 38 U.S.C. §§ 1110, 1112(a), 1131, 1137; 38 C.F.R. §§ 3.303(a), 3.306, 3.307 (1994). When a disease is first diagnosed after service, service connection may nevertheless be established by evidence demonstrating that the disease was in fact "incurred" during the veteran's service. *See* 38 C.F.R. § 3.303(d) (1994); *Combee v. Brown*, 34 F.3d 1039, 1042 (Fed.Cir.1994) ("[p]roof of direct service connection ... entails proof that exposure during service caused the malady that appears many years later"); *Cosman v. Principi*, 3 Vet.App. 503, 505 (1992) ("even though a veteran may not have had a particular condition diagnosed in service, or for many years afterwards, service connection can still be established"); *Godfrey v. Derwinski*, 2 Vet.App. 352, 356 (1992). A claim for service connection of a disability must be accompanied by evidence which establishes that the claimant currently has the disability. *See Rabideau v. Derwinski*, 2 Vet.App. 141, 144 (1992); *see also Brammer v. Derwinski*, 3 Vet.App. 223, 225 (1992) (absent "proof of a present disability there can be no valid claim").

"[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a); *Murphy, supra*. The Court has held: "[T]he [VA] benefits system requires more than just an allegation; a claimant must submit supporting evidence." *Tirpak*, 2 Vet.App. at 611. Where the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is required to fulfill the well-grounded-claim requirement of section 5107(a); where the determinative issue does not require medical expertise, lay testimony may suffice by itself. *See Heuer v. Brown*, 7 Vet.App. 379, 383–84 (1995) (citing *Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993)). A Board determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Grivois* and *Grottveit*, both *supra*.

In the instant case, the Board found the veteran's claims well grounded and then proceeded to adjudicate their merits. Although the Board's conclusions that the claims were well grounded is purely conclusory, devoid of any supporting analysis, those conclusions are not erroneous. As to the hearing-loss claim, there is sufficient medical evidence of a current disability within the meaning of the applicable regulation, 38 C.F.R. § 3.385, in Dr. Lang's "speech recognition" score of 88% on the December 1991 audiogram. R. at 58; *see Rabideau, supra*. This score could plausibly refer to the "Maryland CNC Test" used as a reference in the regulation ("when speech recognition scores using the Maryland CNC Test are less than 94 percent"), 59 Fed.Reg. 60,560. Further, there is sufficient medical evidence of a nexus between current hearing loss and service in both Dr. Laughlin's and Dr. Lang's medical opinions attributing hearing loss to conditions in military service. R. at 40, 57. Accordingly, the hearing-loss claim was well grounded. *See Heuer, Grottveit, Tirpak,* and *Murphy, all supra*.

As to the tinnitus claim, whether it is well grounded is less clear because the record does not include a clear diagnosis of current tinnitus. However, because Dr. Lang's re-

port could just as reasonably be read as making such a diagnosis or as merely reporting history and complaints provided the veteran and because the Board did not adequately address that matter, the Board did not err in finding that the tinnitus claim was well grounded. *See Grivois,* 6 Vet.App. at 140 (Court assumes claim is well grounded because of ambiguous statement in physician's opinion, and remands claim because of reasons-or-bases deficiency on merits denial).

For the foregoing reasons, I conclude that the questions of whether the Board's July 1992 decision contained an adequate statement of reasons or bases and a duty-to-assist violation were properly addressed by the Court. In *Grivois,* 6 Vet.App. at 139, the Court scolded the Secretary for proceeding to assist a claimant in developing his claims without paying sufficient heed to the determination as to whether the claims brought met the statutory requirements, as construed by the Court's precedents, to be well grounded. "Attentiveness to this threshold issue is, by law, not only for the Board but for the initial adjudicators, for it is their duty to avoid adjudicating implausible claims at the expense of delaying well-grounded ones." *Ibid.* So concerned was the Court about this matter that it added: "[I]f the Secretary, as a matter of policy, volunteers assistance to establish well groundedness, grave questions of due process can arise if there is apparent disparate treatment between claimants in this regard." *Grivois,* 6 Vet.App. at 140. I believe the Court should similarly address the threshold question of whether the claims here are well grounded before finding the errors noted above.