http://www.va.gov/vetapp16/Files5/1639925.txt

Citation Nr: 1639925 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 97- 20 382A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, 
the Commonwealth of Puerto Rico

THE ISSUES

1. Entitlement to service connection for hypertension. 

2. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), dysthymia, depression with psychosis, memory loss, cognitive disorder, and sleep impairment. 

3. Entitlement to service connection for fatigue claimed as due to a qualifying chronic disability to include undiagnosed illness and chronic multi-symptom illness.

4. Entitlement to service connection for joint pain, claimed as due to a qualifying chronic disability to include undiagnosed illness and chronic multi-symptom illness.

5. Entitlement to service connection for a skin disorder, claimed as due to a qualifying chronic disability to include undiagnosed illness and chronic multi-symptom illness.

6. Entitlement to service connection for flu-like symptoms, claimed as due to a qualifying chronic disability to include undiagnosed illness and chronic multi-symptom illness.

ATTORNEY FOR THE BOARD

Amanda Radke, Associate Counsel 

INTRODUCTION

The Veteran, who is the appellant, served honorably on active duty from December 1967 to December 1969, and from January 1991 to June 1991, as well as periods of active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA). 

This matter comes before the Board of Veterans' Appeals (Board) from an August 1995 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico, which denied service connection for hypertension, PTSD, and undiagnosed illnesses manifested by joint pain, memory loss, a skin disorder, fatigue, and flu-like symptoms. 

In March 2003, the Board denied the issues, and the Veteran appealed to the United States Court of Appeals for Veterans Claims (Court). In a June 2004 order, the Court granted a Joint Motion for Remand that vacated the Board decision and remanded the claim to the Board to obtain new VA examinations and opinions. In February 2005, the Board remanded the claim to obtain the VA examinations and opinion ordered in the June 2004 Court order. In June 2009, the Board remanded the claim again to comply with the February 2005 remand, to obtain service-treatment records that had been separated from the claims file, and to obtain updated VA treatment records. 

The Court has held that the scope of a claim for service connection for a mental disability includes any mental disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record. See Clemons v. Shinseki, 23 Vet. App. 1, 5-6 (2009). The Veteran initially filed a claim for service connection for PTSD; however, the evidence of record shows a diagnosis of depression with psychosis. The claim on appeal has, therefore, been recharacterized to conform to Clemons. 

FINDINGS OF FACT

1. The Veteran has a current diagnosis of hypertension. 

2. VA has not met its burden of proving the hypertension was clearly and unmistakably not aggravated by service. 

3. The hypertension was chronic in service. 

4. The Veteran has current psychiatric diagnoses of dysthymia and depression with psychosis.

5. The memory loss and cognitive impairment are symptoms of the diagnosed psychiatric disabilities. 

6. The psychiatric disabilities are related to active service. 

7. The Veteran had service in the Southwest Asian Theater of operations during the Persian Gulf War. 

8. The joint pain in the back has been diagnosed as spondyloarthritis of the lumbar spine. 

9. The joint pain in the right knee has been diagnosed as arthritis. 

10. The joint pain in the left knee has been diagnosed as arthritis. 

11. The Veteran injured the left knee during a period of ACDUTRA. 

12. The left knee arthritis is related to the injury that occurred during ACDUTRA. 

13. The Veteran has a current qualifying chronic multi-symptom disability characterized by fatigue, lack of stamina, dyspnea, shortness of breath, and chest pain. 

14. The Veteran has a current qualifying chronic multi-symptom skin disability characterized by the feeling of knives cutting the skin on his chest. 

15. The Veteran has a separate skin disability diagnosed as tinea versicolor. 

16. The Veteran has respiratory disabilities diagnosed as mild chronic obstructive pulmonary disease (COPD) and sinusitis. 

CONCLUSIONS OF LAW

1. Resolving reasonable doubt in favor of the Veteran, the criteria for service connection for hypertension have been met. 38 U.S.C.A. §§ 1110, 1112, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2015).

2. Resolving reasonable doubt in favor of the Veteran, the criteria for service connection for an acquired psychiatric disability, to include symptoms of dysthymia, depression, psychosis, memory loss, and sleep impairment, have been met. 38 U.S.C.A. §§ 1101, 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2015). 

3. The criteria for presumptive service connection for spondyloarthritis of the lumbar spine as a qualifying undiagnosed chronic illness have not been met. 38 U.S.C.A. §§ 1110, 1112, 1117, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317 (2015). 

4. The criteria for presumptive service connection for arthritis of the right knee as a qualifying undiagnosed chronic illness have not been met. 38 U.S.C.A. §§ 1110, 1112, 1117, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317 (2015).

5. Resolving reasonable doubt in favor of the Veteran, the criteria for service connection for arthritis of the left knee have been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2015). 

6. Resolving reasonable doubt in favor of the Veteran, the criteria for presumptive service connection for fatigue and weakness, as an undiagnosed chronic disability have been met. 38 U.S.C.A. §§ 1101, 1110, 1117, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317 (2015).

7. Resolving reasonable doubt in favor of the Veteran, the criteria for presumptive service connection for an undiagnosed skin disability have been met. 38 U.S.C.A. §§ 1101, 1110, 1117, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317 (2015).

8. The criteria for presumptive service connection for tinea versicolor have not been met. 38 U.S.C.A. §§ 1101, 1110, 1117, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317 (2015).

9. The criteria for presumptive service connection for "flu like symptoms" as an undiagnosed respiratory disability have not been met. 38 U.S.C.A. §§ 1101, 1110, 1117, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist 

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159 (2015). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). Such notice should also address VA's practices in assigning disability evaluations and effective dates for those evaluations. See Dingess v. Nicholson, 19 Vet. App. 473 (2006); see also Hartman v. Nicholson, 19 Vet. App. 473 (2006). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

The duty to notify was satisfied in a July 2006 letter to the Veteran which addressed all three notice elements and informed the Veteran of the evidence required to substantiate the claim and of the Veteran's and VA's respective duties for obtaining evidence. The Veteran was also notified of effective dates for ratings and degrees of disability. See Dingess, 19 Vet. App. 473. 

VA satisfied its duty to assist the Veteran in the development of the claim. First, VA satisfied its duty to seek, and assist in the procurement of relevant records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, private treatment records, VA treatment records, VA examination reports, and lay statements. 

VA satisfied its duty to obtain a medical opinion when required. See 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a); McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). The Veteran was provided with VA examinations (the reports of which have been associated with the claims file) in February 1995, March 1995, April 1995, May 1995, September 2002, June 2008, and August 2012. The Board finds that the VA examination reports, taken in light of the other lay and medical evidence of record, are thorough and adequate and provide a sound basis upon which to base a decision with regard to the issue on appeal. The VA examiners reviewed the claims file, personally interviewed and examined the Veteran, including eliciting a history, conducted a physical examination, and offered opinions with supporting rationale. 

The Veteran was given the opportunity to testify before a Veterans Law Judge, but declined. As VA satisfied its duties to notify and assist the Veteran, the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. § 5103(a), § 5103A, or 38 C.F.R. § 3.159. 

Service Connection Legal Criteria 

Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Generally, service connection for a disability requires evidence of: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred in or aggravated by service. See Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009).

For a chronic disease, such as arthritis or hypertension, service connection may be established under 38 C.F.R. § 3.303(b) if a chronic disease or injury is shown in service, and subsequent manifestations of the same chronic disease or injury at any later date, however remote, are shown, unless clearly attributable to intercurrent causes. For a showing of a chronic disorder in service, the mere use of the word chronic will not suffice; rather, there is a required combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Continuity of symptomatology after service is required where a condition noted during service is not, in fact, chronic, or where a diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303(b).

The presumptive service connection provisions based on "chronic" in-service symptoms and "continuity of symptomatology" after service under 38 C.F.R. 
§ 3.303(b) have been interpreted as an alternative to service connection only for the specific chronic diseases listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 
718 F.3d 1331 (Fed. Cir. 2013) (holding that the "chronic" in service and "continuous" post-service symptom presumptive provisions of 38 C.F.R. 
§ 3.303(b) only apply to "chronic" diseases at 3.309(a)).

Service connection may also be established with certain chronic diseases, including arthritis and hypertension, based upon a legal presumption by showing that the disorder manifested itself to a degree of 10 percent disabling or more within one year from the date of separation from service. Such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113 (West 2014); 
38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumptive period, it must be shown by acceptable lay or medical evidence that there were characteristic manifestations of the disease to the required degree during that time.

Furthermore, service connection may be granted on a presumptive basis for a Persian Gulf veteran who exhibits objective indications of qualifying chronic disability, including resulting from undiagnosed illness, that became manifest either during active service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 21, 2016, and which by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317(a)(1). In claims based on qualifying chronic disability, unlike those for direct service connection, there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004). Laypersons are competent to report objective signs of illness.

The term "Persian Gulf veteran" means a veteran who served on active military, naval, or air service in the Southwest Asia Theater of operations during the Persian Gulf War. 38 C.F.R. § 3.317(e)(1). The DD Form 214 and DD Form 215 reflect that the Veteran served in Southwest Asia from February 1991 to June 1991; therefore, he is a "Persian Gulf veteran" (i.e., had active military service in the Southwest Asian Theater of operations during the Gulf War) as defined by 38 C.F.R. § 3.317. 

A "qualifying chronic disability" for VA purposes is a chronic disability resulting from (A) an undiagnosed illness, (B) a medically unexplained chronic multi-symptom illness (such as chronic fatigue syndrome (CFS), fibromyalgia, or IBS) that is defined by a cluster of signs or symptoms, or (C) any diagnosed illness that the Secretary determines in regulation prescribed under 38 U.S.C.A. § 1117(d) warrants a presumption of service connection. 38 U.S.C.A. § 1117(a)(2); 38 C.F.R. § 3.317(a)(2)(i)(B) .

"Objective indications of chronic disability" include both "signs," in the medical sense of objective evidence perceptible to a physician, and other, non-medical indicators that are capable of independent verification. To fulfill the requirement of chronicity, the illness must have persisted for a period of six months. 38 C.F.R. § 3.317(a)(2), (3). Signs or symptoms that may be manifestations of undiagnosed illness include, but are not limited to, the following: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs or symptoms; (7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; (12) abnormal weight loss, and (13) menstrual disorders. 38 C.F.R. § 3.317(b).

Determinations as to service connection will be based on review of the entire evidence of record, to include all pertinent medical and lay evidence, with due consideration to VA's policy to administer the law under a broad and liberal interpretation consistent with the facts in each individual case. See 38 U.S.C.A. § 1154(a) (West 2014); 38 C.F.R. § 3.303(a). When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. As with all claims, when there is an approximate balance of positive and negative evidence regarding any matter material to the claim, the claimant shall be given the benefit of the doubt.

Service Connection for Hypertension 

The Veteran generally contends that the hypertension began during a period of service, or alternatively, was aggravated by service. See December 1994 claim; see also December 2008 informal hearing presentation. 

A veteran will be considered to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable evidence demonstrates that an injury or disease existed prior thereto and was not aggravated by service. 38 U.S.C.A. § 1111. Only such conditions as are recorded in examination reports are to be considered as noted. 38 C.F.R. § 3.304(b). 

Where such defects, infirmities or disorders are not noted when examined, accepted, and enrolled for service, pursuant to 38 U.S.C.A. § 1111 and 38 C.F.R. § 3.304, in order to rebut the presumption of soundness on entry into service, VA must show by clear and unmistakable evidence both that the disease or injury existed prior to service and that the disease or injury was not aggravated by service. See Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004). 

The Board notes that, at one time, service treatment records for the period of active duty from January 1991 to June 1991 were of record; however, they are no longer associated with the claims file. In this context, the Board has a heightened obligation to carefully consider the benefit-of-the-doubt rule. See O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991); Pruitt v. Derwinski, 2 Vet. App. 83, 85 (1992).

Pursuant to Diagnostic Code 7101, Note 1, for VA rating purposes, the term hypertension means that the diastolic blood pressure is predominantly 
90 millimeters (mm.) or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160 mm. or greater with diastolic blood pressure of less than 90 mm. 38 C.F.R. § 4.104 (2015).

In the March 2003 decision, the Board noted that the Veteran was not afforded an entrance examination upon re-entry into active service in January 1991. As stated above, only such conditions as are recorded in examination reports are to be considered as noted; therefore, the Board finds that a preexisting hypertension disability was not "noted" at service entrance. 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304(b). 

Because a preexisting hypertension was not noted at service entrance or examination, the burden shifts to VA to demonstrate by clear and unmistakable evidence both that hypertension preexisted service and was not aggravated by service. While there is some evidence indicating the preexistence of hypertension, the Board finds that the presumption of soundness has not been rebutted in this case because the evidence is not clear and unmistakable that the hypertension was not aggravated by service. 

VA treatment records show that in December 1990, prior to reentry into active service, the Veteran's blood pressure was 150/100, and the Veteran was diagnosed with hypertension and was started on antihypertensive medication, indicating that the hypertension preexisted service. 

In the March 2003 decision, the Board noted that during active service, blood pressure readings were 130/96, 140/100, 130/80, 120/90, and 120/80. In June 1991, the Veteran additionally had a blood pressure reading of 160/95, and in July 1991, the Veteran had a blood pressure reading of 140/100. The Board notes that the Veteran was prescribed medication for hypertension in December 1990, and, therefore, was medicated for hypertension during active service. These service treatment records are no longer associated with the claims file. 

A June 2008 VA examination report notes that the Veteran began medication for hypertension in December 1990, but that he has had to have many medication changes throughout the years since the diagnosis because the hypertension has been uncontrolled. 

In August 2012, the Veteran was afforded a VA examination to help assess the etiology of the hypertension. At that time, the VA examiner opined that it is clearly and unmistakably shown that the hypertension was not aggravated by service because there is no evidence of increased manifestations during the period of active service. The examiner relied on the blood pressure readings prior to service and the blood pressure readings after service separation. The examiner did not address the fluctuation of blood pressure readings during active service, and it is unclear from the record whether the VA examiner had the complete service treatment records at the time of the opinion. 

The Board finds that, while there is evidence that the hypertension preexisted the second period of active service, the evidence does not meet the high burden of clear and unmistakable evidence that the hypertension was not aggravated by service. While the August 2012 VA examiner opined that there was clear and unmistakable evidence that the hypertension was not aggravated, the Board finds the opinion to have little probative value as the VA examiner did not address the blood pressure readings noted by the Board during active service, including readings of 140/100, 130/96, and 120/90, which were taken while the Veteran was prescribed anti-hypertensive medication. Additionally, it appears that the service treatment records may not have been of record; therefore, the rationale that there were no complaints or evaluations for hypertension during active duty can be afforded low probative value. For these reasons, the Board finds that the burden on VA to rebut the presumption of soundness has not been met because the evidence does not show by clear and unmistakable evidence that the disability preexisted service; therefore, the Veteran is presumed to have been sound at service entrance. 38 U.S.C.A. § 1111; 38 C.F.R. § 3.304. Because the presumption of soundness is not rebutted, this case converts to one for direct service connection. See Wagner, 370 F.3d at 1096. 

Turning to the first step of service connection, the Board finds that the Veteran has a current diagnosis of hypertension. As stated above, the Veteran was first diagnosed with hypertension in December 1990. Additionally, review of VA treatment records show continuous treatment for hypertension, which is now controlled. 

Next, the Board finds that the hypertension was chronic in service. As discussed above, the Board noted in the March 2003 decision that during service, the Veteran had blood pressure readings of 140/100, 130/96, and 120/90. As the Veteran experienced diastolic blood pressure on three separate occasions during service (while taking continuous medication for hypertension) that was 90mm or greater, the Board finds that the Veteran had chronic hypertension manifest during service. Based on the above, service connection for hypertension, as a chronic disability that manifested during service, is warranted. 38 C.F.R. §§ 3.307, 3.309. The grant of presumptive service connection renders moot all other theories of service connection. 

Service Connection for an Acquired Psychiatric Disorder

The Veteran generally contends that he suffers from PTSD as a result of fear of hostile military activity. The Veteran stated that in February 1991, while on guard duty, a SCUD missile landed nearby, causing the ground to shake and the unit to receive orders to put on their gas masks, and the Veteran asserted that he was afraid for his life. See December 2004 stressor statement (January 2005 translation). The Veteran reported psychiatric symptoms beginning two to three months after returning from Saudi Arabia, and that he had no other stressors after military service. See May 1995 VA examination report. 

Initially, the Board finds that the Veteran has a psychiatric diagnosis of depression and dysthymia. In February 1995, the Veteran was afforded a VA examination to help assess any psychiatric disability. At that time, the VA examiner did not diagnose any psychiatric disabilities. In April 1995, the Veteran was afforded another VA examination regarding the psychiatric disability, and the VA examiner assessed a diagnosis of depression or dysthymia. In May 1995, the Veteran was afforded another VA examination, and at that time, the VA examiner diagnosed dysthymia. 

In September 2002, the Veteran was afforded another VA examination. At that time, the VA examiner diagnosed major depressive disorder, with symptoms of insomnia. In June 2008, the Veteran was afforded a neurological examination regarding symptoms of memory loss, and at that time, a diagnosis of mild cognitive disorder was made. In August 2012, the Veteran was afforded another VA psychiatric examination, and at that time, the VA examiner assessed that, while the Veteran's reported in-service stressors are sufficient to support a diagnosis of PTSD, the Veteran does not meet the DSM-IV criteria for PTSD, but the Veteran has a diagnosis of depressive disorder with symptoms of depression, anxiety, memory loss and impairment of short and long term memory. 

Review of VA treatment records shows that in January 1995, the Veteran reported symptoms of depression, sleep impairment, and memory problems since returning from the Persian Gulf. Furthermore VA treatment records show a diagnosis of, and continued treatment for, depression with psychosis. 

Next, the Board finds that that weight of the evidence demonstrates that the Veteran was present and observed a SCUD missile in February 1991 which landed at a nearby base while deployed in the Persian Gulf. The Veteran is competent to report witnessing a SCUD missile that landed nearby and the events that occurred afterwards. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a veteran is competent to report on that of which he or she has personal knowledge). Furthermore, as the Veteran's DD Form 214 and DD Form 215 demonstrate service in the Persian Gulf, including Southwest Asia service medal with bronze star and Kuwait liberation medal, the Board finds that the Veteran's report of witnessing a SCUD missile is consistent with the places, types, and circumstances of his service. See 38 U.S.C.A. § 1154 (a). 

After review of all the evidence, both medical and lay, and resolving reasonable doubt in favor of the Veteran, the Board finds that the diagnosed psychiatric disability is related to service. As discussed above, the Veteran was afforded multiple VA examinations to help assess the psychiatric disability; however, while the VA examines provided opinion regarding whether the Veteran meets the DSM criteria for PTSD, no VA examiner provided an etiological opinion regarding whether the diagnosed depression and dysthymia are related to the in-service stressors. Nonetheless, the Veteran has consistently reported the onset of psychiatric symptoms beginning two to three months after return from Saudi Arabia. On the December 1994 application for service connection, the Veteran reported symptoms of depression, nightmares, and memory problems beginning upon returning from the Persian Gulf. January 1995 VA treatment shows complaints of depression, nightmares, and memory problems since returning from the Persian Gulf. At the April 1995 VA examination, the Veteran reported symptoms beginning after returning from the Persian Gulf. Furthermore, the evidence of record does not suggest, and the Veteran has not asserted, that he had any post-service stressors that caused the on-set of the psychiatric symptoms. 

After resolving reasonable doubt in favor of the Veteran, the Board finds that the psychiatric symptoms described by the Veteran (claimed as PTSD), and diagnosed as dysthymia and depression (with psychosis) are related to the Veteran's active service. The Board additionally notes that the Veteran has separately claimed service connection for memory problems and sleep impairment; however, as the September 2002 and August 2012 VA examiner have diagnosed those symptoms as part of the depression, the grant of service connection depression with psychosis and dysthymia encompasses the symptoms of memory loss (also diagnosed as mild cognitive disorder) and sleep impairment. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 

Service Connection for Arthritis of the Lumbar Spine and
Arthritis of the Right Knee

The Veteran generally contends that he has undiagnosed "joint pain" that is related to active service in the Persian Gulf. See December 1994 claim for service connection. Review of the record shows that the Veteran has complaints of back pain and right knee pain; however, the Veteran has not asserted during any portion of the appeal period that he injured his back or right knee during either period of active duty. Rather, the evidence of record shows that the Veteran has limited the claim for "joint pain" as an undiagnosed illness due to service in Southwest Asia and has not advanced any other theory of service connection regarding musculoskeletal pain of the back and right knee. Therefore, the Board will only address the issue of presumptive service connection for an undiagnosed chronic disease. 

Review of VA treatment records show that in December 1990, prior to re-entering active service, the Veteran sought treatment for low back pain, and gave a 20 year history of back pain reoccurring on and off. Imaging studies conducted in January 1991 revealed narrowing of the L4, L5, and S1 discs, and a diagnosis of lumbar spondyloarthritis was made. Additionally, VA treatment records show that in March 2002, the Veteran was diagnosed with right knee osteoarthritis. 

As stated above, a "qualifying chronic disability" for VA purposes is a chronic disability resulting from (A) an undiagnosed illness, (B) a medically unexplained chronic multi-symptom illness (such as chronic fatigue syndrome (CFS), fibromyalgia, or IBS) that is defined by a cluster of signs or symptoms, or (C) any diagnosed illness that the Secretary determines in regulation prescribed under 38 U.S.C.A. § 1117(d) warrants a presumption of service connection. 38 U.S.C.A. § 1117(a)(2); 38 C.F.R. § 3.317(a)(2)(i)(B). 

In this instance, the Veteran's musculoskeletal pain of the back and right knee have been diagnosed specifically as spondyloarthritis and osteoarthritis; therefore, the claim for presumptive service connection based on an undiagnosed illness occurring in Persian Gulf veterans must be denied. 38 C.F.R. § 3.117. Furthermore, as the Veteran has not asserted, and the record does not otherwise suggest, that the spondyloarthritis of the lumbar spine or osteoarthritis of the right knee is related to any period of active service, to include service during the Vietnam Era and Persian Gulf Era, that there was any in-service injury to the back during either period of active duty, ACDUTRA, or INACDUTRA, or that symptoms of the spondyloarthritis were continuous since separation from active service or manifested to a compensable degree within one year of separation from active duty. Therefore, the claim for service connection for "joint pain" diagnosed as spondyloarthritis of the lumbar spine and right knee osteoarthritis must be denied.

Service Connection for Arthritis of the Left Knee 

The Veteran generally contends that he has undiagnosed "joint pain" due to service in Southwest Asia. See December 1994 claim for service connection. Alternatively, the Veteran contends that he has a left knee disability that is related to an injury that occurred during a period of ACDUTRA in 1977 or 1978 at Fort Drum in New York while performing training exercises when his lower legs were immersed in mud and he was hit by a 2 x 6 piece of lumber over the left knee. See September 2002 VA examination report. 

Review of VA treatment records show that in August 2001 a diagnosis of degenerative joint disease of the left knee was made. Additionally, an October 2001 MRI revealed advanced osteoarthritis of the medical joint compartment of the left knee. 

After review of all the evidence, both medical and lay, and resolving reasonable doubt in favor of the Veteran, the Board finds that the arthritis of the left knee is related to the injury to the left knee during a period of ACDUTRA. 

In September 2002, the Veteran was afforded a VA examination to help assess the nature and etiology of the left knee disability. At that time, the Veteran stated that he injured his left knee during training exercises regarding the construction of military bridges during a period of ACDUTRA at Fort Drum, New York in 1977 or 1978. The Veteran reported that his legs were immersed in mud and his left knee was hit by a 2 x 6 piece of lumber that fell. The Veteran reported severe pain in the knee, but that he did not seek treatment at that time so he could return home to Puerto Rico. The Veteran reported returning to Puerto Rico where he received treatment for the left knee, and his leg was immobilized in a cast for four to five months. The Veteran reported that since that injury, he has had continuous symptoms of left knee pain. At that time, the VA examiner diagnosed both degenerative joint disease of the left knee and a left medial meniscal tear, status post arthroscopy. The VA examiner did not provide an etiological opinion. 

The Board notes that there are no service treatment records for the period of reserve service from 1969 to 1991, and the Board has a heightened duty to consider the benefit-of-the-doubt rule. See O'Hare, 1 Vet. App. at 367; Pruitt, 2 Vet. App. at 85. The Veteran is competent to report injuries that occurred during periods of ACDUTRA, and the Board finds the Veteran's account of an injury during a period of ACDUTRA at Fort Drum to be credible, as it is consistent with the types of activities that would have been performed by the Veteran. 

In June 2008, the Veteran was afforded another VA examination to help assess the etiology of the left knee arthritis. At that time, the VA examiner opined that the left knee meniscal injury could not be related to service because he had surgery several years after service. The VA examiner additionally opined that the osteoarthritis could be related to service as it can be related to aging and the Veteran spent 25 years in active and reserve service. The VA examiner did not address the Veteran's contentions that the left knee injury initially occurred during a period of ACDUTRA and that he continued to have symptoms of left knee pain after that injury. 

In August 2012, the Veteran was afforded another VA examination to help assess the etiology of the left knee arthritis. At that time, the VA examiner opined that the left knee arthritis is less likely than not related to service as the claims folder does not show evidence of any knee injuries while the patient was in service. Nonetheless, as the Board has found that the Veteran injured his left knee during a period of ACDUTRA, the Board finds the August 2012 opinion to have low probative value as it is based on an inaccurate factual premise that the Veteran did not experience an injury to the knee during active service. See Reonal v. Brown, 
5 Vet. App. 458, 461 (1993) (holding that the Board should reject a medical opinion based on an inaccurate factual basis).

Based on the above, the Board finds that the weight of the evidence is in equipoise regarding whether the arthritis of the left knee is related to the in-service injury to the left knee. The Veteran has endorsed symptoms of left knee pain since the initial injury to the left knee during the period of ACDUTRA. Additionally, while the June 2008 VA examiner opined that the meniscus injury was not related to service, the VA examiner opined that the arthritis could be related to service. Therefore, the Board finds that the left knee arthritis is related to a period of ACDUTRA. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 

The Board additionally notes that the an unappealed October 2012 rating decision denied service connection for the left knee meniscal tear, and no new and material evidence was received within one year of the October 2012 rating decision. 38 C.F.R. § 3.156(b). The finality of a prior final decision must be respected in VA adjudications. See 38 U.S.C.A. § 7105(c) (West 2014); 38 C.F.R. §§ 3.105, 20.1103 (2015); 38 U.S.C.A. § 5110 (West 2014) and 38 C.F.R. § 3.400(o) (2015) (implicitly recognizing that there must be a claim for increase, formal or informal, to be compared with the factual date of worsening, to determine an effective date). Therefore, the current grant of service connection for left knee arthritis does not extend to override the finality of the October 2012 rating decision denying service connection for the left knee meniscal tear. 

Service Connection for Fatigue 

The Veteran generally contends that he has an undiagnosed chronic disability manifested by symptoms of fatigue, weakness, lack of stamina, dyspnea, shortness of breath, and chest pain. 

First the Board finds that the weight of the evidence is at least in equipoise regarding whether the Veteran has signed and symptoms of a qualifying chronic multi-symptom illness of fatigue. In 1994, the Veteran received VA treatment and a Persian Gulf screening, and at that time, the Veteran reported experiencing chronic fatigue and tiredness. In January 1995, the Veteran again complained of symptoms of fatigue and generalized weakness and was referred for treatment. In March 1995, the Veteran was afforded a VA examination, and at that time, the Veteran complained of tiredness and somnolence, occurring even after a good night's rest. Additionally, in March 1995, the Veteran's wife accompanied him to a VA treatment appointment and reported that the Veteran is "tired all the time" and "appears constantly tired." In April 2007, the Veteran again sought treatment and reported experiencing symptoms of fatigue. In June 2008, the Veteran was afforded a VA examination, and at that time, the Veteran reported suffering from fatigue since returning from Saudi Arabia, with feelings of weakness, lack of stamina, shortness of breath, dyspnea, and chest pain. A November 2008 VA treatment record shows complaints of fatigue and weakness. 

In August 2012, the Veteran was afforded another examination to assess the fatigue. At that time, the VA examiner wrote that the Veteran was questioned regarding symptoms of fatigue beginning during service or within one year of service separation, and the Veteran denied symptoms of fatigue beginning during service or within one year of service separation. However, the VA examiner did not address whether the Veteran has current symptoms of fatigue. 

The Board next finds that the Veteran has exhibited objective symptoms of fatigue that was manifested to a degree of 10 percent disability prior to December 31, 2016. As discussed above, the Veteran's wife reported that the Veteran had appeared "tired all the time" and the Veteran specifically sought treatment for fatigue. Additionally, as the Veteran continues to complain of fatigue since 1994, the Board finds that the fatigue is "chronic." 

Finally, the Board finds that the evidence is at least in equipoise regarding whether the fatigue has manifested to a degree of 10 percent disability. Diagnostic Code 6354 provides ratings for chronic fatigue syndrome consisting of debilitating fatigue, cognitive impairments (such as inability to concentrate, forgetfulness, confusion), or a combination of other signs and symptoms. 38 C.F.R. § 4.88b (2015). Under Diagnostic Code 6354, a 10 percent rating is assigned for signs and symptoms of CFS that wax and wane but result in periods of incapacitation of at least one but less than two weeks total duration per year or the symptoms are controlled by continuous medication. Id. 

Review of VA treatment records shows that the Veteran is prescribed anti-depressive medication, which can be used to treat chronic fatigue syndrome, and the Veteran has had continued complaints of fatigue, even with continuous medication. After a review of all the lay and medical evidence of record, the Board finds that the weight of the evidence reflects that the Veteran's chronic fatigue syndrome has been manifested by symptoms of debilitating fatigue that wax and wane but result in periods of incapacitation of at least one but less than two weeks total duration per year, consistent with a 10 percent disability rating under Diagnostic Code 6354. 38 C.F.R. §§ 4.3, 4.7, 4.88b (2015). 

Based on the above, service connection chronic fatigue and weakness, as medically unexplained chronic multi-symptom illnesses, is warranted. 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317. The grant of presumptive service connection as due to a qualifying chronic disability renders moot other theories of service connection.

Service Connection for a Skin Disorder

The Veteran generally claims he has an undiagnosed skin disorder that causes the feeling of a knife cutting his skin on his chest that began within six months of returning from Saudi Arabia. See December 1994 application for service connection; see also March 1995 VA examination report. 

First the Board finds that the weight of the evidence is at least in equipoise regarding whether the Veteran has signs and symptoms of an undiagnosed skin disability. In March 1995, the Veteran was afforded a VA examination to help assess any skin disability. At that time, the Veteran reported the feeling as if a knife was cutting the skin on his chest every time it was scratched. At that time, there were no abnormal skin findings. Additionally, at a separate May 1995 skin examination, the Veteran reported the sensation of pain on his chest, and there was no skin pathology found. In January 1995, VA treatment records reflect that the Veteran sought treatment for a skin rash. 

In June 2008, the Veteran was afforded another VA examination to help assess the nature of a skin disability. At that time, the Veteran reported developing rashes after service. At that time, the VA examiner noted diffuse round macules over the Veteran's back, inguinal, and thighs, and the VA examiner diagnosed tinea versicolor. 

The Board next finds that the Veteran has exhibited objective symptoms of a skin disorder that was manifested to a degree of 10 percent disability prior to December 31, 2016. The Veteran sought treatment for a skin rash in 1995, indicating there were objective symptoms of a skin disability. Regarding the manifestation to a degree of 10 percent or more, the Board finds that the skin disorder more closely approximates dermatitis and eczema, which are rated under Diagnostic Code 7806, 38 C.F.R. § 4.118 (2015). Under Diagnostic Code 7806, dermatitis or eczema is rated 10 percent when at least 5 percent, but less than 20 percent of the entire body is affected, or at least 5 percent but less than 20 percent of exposed areas affected, or there is intermittent systemic therapy such as immunosuppressive drugs required for a total duration of less than six weeks during the past twelve month period. 

The Veteran has reported symptoms of the sensation of knives on his skin that occur on his chest. See March 1995 VA examination report. In making its decision with respect to the skin disability, the Board has relied on the "Rule of Nines," coupled with the testimony provided by the Veteran. The question of what factual determinations are within the competence of lay persons is fundamentally the same whether the lay person is a witness or an adjudicator. See Savage v. Shinseki, 24 Vet. App. 249, 259 (2011) (recognizing analogously that the Board is competent to interpret audiometric graphs into numeric form, and requiring the Board to address such test results in the record); Kelly v. Brown, 7 Vet. App. 471 (1995) (recognizing the Board as the fact finder, including interpreting results from an audiometric graph, and requiring the Board to discuss the results of the private audiometric testing). 

The "Rule of Nines" is a method of estimating the percentage of total body surface. The Rule of Nines was developed to help assess the extent of burns. In this method, the body is divided into sections of 9 percent, or multiples of 9 percent, each: head and neck, 9 percent; anterior trunk, 18 percent; posterior trunk, 18 percent; upper limbs, 18 percent; lower limbs, 36 percent; genitalia and perineum, 1 percent. See Miller-Keane Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health, Seventh Edition.

As the Veteran has complained that he has experienced symptoms of a skin disability on his chest, the anterior trunk, which accounts for 18 percent of his body, the Board finds that the skin disability has manifested to a degree of 10 percent under Diagnostic Code 7806. 

Based on the above, service connection for an undiagnosed skin disability, as medically unexplained chronic multi-symptom illnesses, is warranted. 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317. The grant of presumptive service connection as due to a qualifying chronic disability renders moot other theories of service connection.

The Board notes that the diagnosis of tinea versicolor was made at the June 2008 VA examination report; however, the symptoms noted from the tinea versicolor (diffuse round macules over the back, inguinal area, and thighs) were not the same symptoms of a skin disorder described by the Veteran (sensations of knives cutting the Veteran's chest). 

The Board next finds that, based on all the evidence, both medical and lay, that the tinea versicolor is not related to active service, to include service in the Persian Gulf. While the Veteran reported at the June 2008 VA examination that he developed an occasional itchy rash after returning from military service, the Board notes that the Veteran had previously denied symptoms of rash or scaliness at the May 1995 VA examination, but only endorsed symptoms of pain on the chest, as if a knife is cutting his skin. The Board finds that, while the Veteran is competent to report symptoms of a rash beginning after return from the Persian Gulf, the Veteran's statements regarding the symptomology and onset have been inconsistent. The Board finds that the statements made at the March and May 1995 VA examinations to be of more probative value than the Veteran's more recent accounts of skin symptomatology, as they were made more contemporaneous to the development of the symptomology. See Gardin v. Shinseki, 613 F.3d 1374, 1380 (Fed. Cir. 2010) (upholding Board finding that vague and inconsistent lay statements were not credible because they were in direct contradiction to the more credible, competent, reliable, and clearly documented medical evidence); Madden v. Gober, 125 F.3d 1477, 1481 (Board entitled to discount the credibility of evidence in light of its own inherent characteristics and its relationship to other items of evidence). Therefore, service connection for tinea versicolor is not warranted. Because the preponderance of the evidence is against the claim for service connection for tinea versicolor, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.

Service Connection for Flu-Like Symptoms 

The Veteran generally contends that he suffers from an undiagnosed illness causing "flu like symptoms" from service in the Persian Gulf. See December 1994 application for service connection. The Board notes that the Veteran has not specified specifically what types of flu-like symptoms he experiences. To the extent that the Veteran endorses symptoms of fatigue (including weakness and shortness of breath), the Board has granted service-connection for fatigue, the grant of which encompasses some "flu-like symptoms." Furthermore, as with the claim for service connection for "joint pains," the Veteran has only advanced the theory of service connection for "flu like symptoms" as an undiagnosed illness due to service in Southwest Asia and has not advanced any other theory of service connection regarding any respiratory or other flu-like symptoms. Therefore, the Board will only address the issue of presumptive service connection for an undiagnosed chronic disease. 

To the extent that the Veteran describes "flu-like symptoms" that are an undiagnosed respiratory disability, the Board finds that the weight of the evidence does not demonstrate that the Veteran has signs or symptoms of an undiagnosed respiratory disorder that manifested to a compensable degree. VA treatment records show that in April 2003, the Veteran was treated for acute sinusitis and the treating physician assessed an inflammatory process of the paranasal sinuses, most probably chronic. VA treatment records do not show additional complaints of sinus symptoms. 

Sinusitis is rated under a General Formula for Sinusitis, and will be rated at 
10 percent when there are one to two incapacitating episodes per year requiring prolonged antibiotic treatment or three to six non-capacitating episodes per year characterized by headaches, pain, and purulent discharge or crusting. As the evidence of record does not demonstrate, and the Veteran has not asserted, one to two incapacitating episodes or three to six non-capacitating episodes per year characterized by headaches, pain, and purulent discharge or crusting, the Board finds that any sinusitis type "flu like symptoms" did not manifest to a degree of 
10 percent disabling.

Additionally, in June 2008, the Veteran was afforded a VA examination to help assess the nature of any "flu like" respiratory symptoms. At that time, a diagnosis of mild COPD was made; therefore, the claim for presumptive service connection based on an undiagnosed illness occurring in Persian Gulf veterans must be denied. 38 C.F.R. § 3.117. Furthermore, as the Veteran has not asserted, and the record does not otherwise suggest, that the COPD is related to any period of active service, to include service during the Vietnam Era and Persian Gulf Era, the claim for service connection for "flu like" respiratory symptoms diagnosed as COPD must be denied. 

ORDER

Service connection for hypertension is granted.

Service connection for an acquired psychiatric disorder, to include dysthymia, depression with psychosis, memory loss, and sleep impairment is granted. 

Service connection for arthritis of the lumbar spine is denied. 

Service connection for right knee arthritis is denied. 

Service connection for left knee arthritis is granted.

Service connection for undiagnosed fatigue is granted. 

Service connection for undiagnosed symptoms involving skin is granted. 

Service connection for tinea versicolor is denied. 

Service connection for flu-like symptoms is denied. 

______________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs