# United States Court of Appeals for the Federal Circuit

---

**WAYNE J. GARDIN,**

*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee.*

---

2009-7120

---

Appeal from the United States Court of Appeals for Veterans Claims in 07-1812, Judge Bruce E. Kasold.

---

Decided: July 16, 2010

---

JANET A. PIOLI, Brinks Hofer Gilson & Lione, of Chicago, Illinois, argued for claimant-appellant. With her on the brief were MEREDITH MARTIN ADDY and JOHN E. HAUGEN.

TARA K. HOGAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHARDT, Assistant Director. Of counsel

on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and CHRISTA A. CHILDERS, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

---

Before MAYER, GAJARSA, and MOORE, *Circuit Judges*.

GAJARSA, *Circuit Judge*.

This is an appeal by a veteran seeking to obtain disability compensation benefits from the Veterans Administration. Wayne J. Gardin appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the Board of Veterans Appeals' ("Board") denial of Mr. Gardin's claim for disability compensation for diabetes because the disease was not service-connected. *See Gardin v. Shinseki*, No. 07-1812, 2009 WL 1006160 (Vet. App. April 14, 2009). In affirming the Board, the Veterans Court approved the Board's decision to discount a medical opinion merely because the opining physician did not review Mr. Gardin's medical service records. Because the Veterans Court approved an erroneous legal analysis, we vacate and remand.

BACKGROUND

Mr. Gardin served on active duty in the United States Air Force from August 1959 to August 1963. When Mr. Gardin enlisted in the Air Force, he reported no family history of diabetes and made no complaints of symptoms related to diabetes. Mr. Gardin sought medical care, however, several times during his service for various conditions. The service records from Mr. Gardin's medical visits indicate symptoms that could be associated with diabetes. For example, on September 8, 1961, one physician who treated Mr. Gardin noted that he had "*concentrated* urine." J.A. 240 (emphasis in original). On August

14, 1962, when Mr. Gardin was treated for tension head-
aches, the physician noted that he "has fine macules on
dorsum of hands." J.A. 222. Both symptoms of concen-
trated urine and fine macules may indicate diabetes.

When Mr. Gardin underwent his discharge examina-
tion on July 16, 1963, however, he reported no common
symptoms of diabetes, such as dizziness, fainting spells,
eye trouble, sugar or albumin in his urine, or recent
weight gain or weight loss. Mr. Gardin also indicated
that he had never worn glasses, another common symp-
tom of diabetes.

After Mr. Gardin's honorable discharge, his medical
records show that he was diagnosed with diabetes. Mr.
Gardin's first documented diagnosis occurred in August
1971 when he was hospitalized "with complaints of mal-
aise, weight loss[,] and increased dietary intake." J.A.
212 (alteration added). While Mr. Gardin was hospital-
ized, he stated that he had no family history of diabetes
and that he had only been hospitalized previously for
pneumonia. The treating physician, however, diagnosed
Mr. Gardin with diabetes and recommended that he take
insulin. Mr. Gardin declined the insulin treatment and
chose instead to follow a restricted diet. Mr. Gardin's
restricted diet did not prove effective. In December 1977,
he was again hospitalized due to uncontrolled diabetes.
After this hospitalization, Mr. Gardin's medical records
indicate for the first time that he started taking insulin.

In March 1994, Mr. Gardin filed a claim for disability
compensation for his diabetes. The Regional Office ("RO")
denied the claim on June 22, 1994, because Mr. Gardin's
service records did not indicate any in-service treatment
for diabetes and his first diagnosis of diabetes did not
occur until more than one year after his discharge. Mr.
Gardin filed a Notice of Disagreement ("NOD") on July 7,

1994, and a Statement of the Case issued on August 3, 1994, sustaining the RO's initial denial of the claim. Mr. Gardin appealed to the Board, which denied his claim in August 1998 because he failed to establish a nexus between his military service and his diabetes.

In April 2003, Mr. Gardin applied to reopen his claim. In conjunction with his application, Mr. Gardin submitted new evidence to establish a nexus between his military service and his diabetes. This new evidence consisted of lay testimony from family and friends who stated that Mr. Gardin had diabetes around the time of his discharge from military service and medical reports from three physicians recounting Mr. Gardin's history with the disease. The RO again denied his claim and Mr. Gardin filed another NOD. A Statement of the Case issued on July 29, 2004, sustaining the RO's initial decision.

Mr. Gardin then appealed to the Board, which denied his claim on January 9, 2006. Following the Board's decision, Mr. Gardin appealed to the Veterans Court, and both he and the Secretary of Veterans Affairs (the "Secretary") requested that the Veterans Court remand the case back to the Board because the Board failed, *inter alia*, to provide an adequate discussion of its reasons for rejecting Mr. Gardin's new evidence of a nexus between his military service and his diabetes. The Veterans Court granted the motion.

On remand, the Board again denied Mr. Gardin's claim but provided a more detailed analysis. First, the Board found Mr. Gardin's statements and those statements from his family and friends not credible "because they are in direct contradiction to the medical evidence." J.A. 215. Specifically, the lay statements contended that Mr. Gardin used insulin during his military service, yet Mr. Gardin's December 1977 medical records note that it

was not until 1977 that he began using insulin. The Board also indicated that Mr. Gardin's own testimony regarding the onset of his diabetes was contradictory. Given these inconsistencies, the Board held the lay evidence was "too vague and inconsistent with the clearly-documented medical evidence to be deemed more credible, competent or reliable than the medical evidence." J.A. 216.

Next, the Board addressed the three physicians' reports. In Dr. Montgomery's report, he stated that Mr. Gardin had a forty-year history of diabetes. The Board noted, however, that in an earlier report, Dr. Montgomery stated that Mr. Gardin's diabetes began in the 1970s. Accordingly, the Board discredited Dr. Montgomery's later statement as conflicting with his earlier records and other objective medical evidence from the record.

As for the remaining physicians, Dr. Michael Kelberman and Dr. Andrew Sexton, the Board found Dr. Kelberman's report not credible because his diagnosis was based entirely on Mr. Gardin's statements, which the Board had already concluded were unreliable. As for Dr. Sexton, the Board found his report not credible because "[t]he report does not suggest that actual service medical records were reviewed in determining that diabetes was present during service." J.A. 214.

Mr. Gardin subsequently appealed to the Veterans Court. The Veterans Court affirmed the Board's decision. According to the Veterans Court, Mr. Gardin failed to demonstrate that the Board's credibility determinations were clearly erroneous. *Gardin*, 2009 WL 1006160, at *1. The Veterans Court explained that the Board found "Mr. Gardin's own statements regarding the onset of his diabetes were not credible because they were inconsistent over time." *Id.* The Veterans Court further explained

that the Board discounted "the lay testimony of Mr. Gardin's friends and family because they were based on his statements, were vague, and were not consistent with the evidence as a whole." *Id.*

As for the medical evidence, the Veterans Court noted three bases on which the Board discredited the evidence. First, the Board discounted Dr. Montgomery's opinion "because it was inconsistent with the medical examiner's own prior statements." *Id.* Second, the Board discounted Dr. Sexton's report because he "did not review the claims file when reaching his determination that Mr. Gardin had had diabetes during service." *Id.* Third, the Board discounted Dr. Kelberman's report because it was "either based on Mr. Gardin's statements or [was] inconsistent with the evidence as a whole." *Id.* (alteration added). The Veterans Court then held that these bases for rejecting Mr. Gardin's lay and medical evidence were sufficient and deferred to the Board's role as the finder-of-fact. *Id.* Mr. Gardin appeals the Veterans Court's decision.

## DISCUSSION

We have jurisdiction to review decisions of the Veterans Court "with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." 38 U.S.C. § 7292(a) (2006). In such instances, we afford the Veterans Court's legal determinations no deference. *See Szemraj v. Principi*, 357 F.3d 1370, 1372 (Fed. Cir. 2004). However, except for constitutional issues, we may not review any "challenge to a factual determination" or any "challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

Mr. Gardin invokes our jurisdiction by raising two questions of law. First, he argues that the Veterans Court "improperly created a new rule of law that permits the Board to reject medical evidence solely on the assumption that the physician did not review the veteran's service medical records." Appellant Br. 22. Second, he argues that the Veterans Court erroneously interpreted 38 U.S.C. §§ 1154(a), 5107(b) and 38 C.F.R. §§ 3.159(a)(2), 3.303(a), 3.307(b) to require contemporaneous medical evidence before considering lay evidence credible. Both arguments are strictly legal, do not depend upon the application of facts to law, and refer to specific portions of the Veterans Court's opinion that implicitly interpret 38 U.S.C. § 1154(a) and other statutes. "Because this appeal presents purely legal questions . . . [,] we have jurisdiction pursuant to 38 U.S.C. § 7292(a)." *Prillaman v. Principi*, 346 F.3d 1362, 1364 (Fed. Cir. 2003).

We address first Mr. Gardin's argument that the Veterans Court created a new rule of law that permits the Board to discount medical evidence solely because the physician providing the medical evidence did not review the veteran's service medical records. The Veterans Court approvingly noted that the Board discounted Dr. Sexton's medical report because he "did not review the claims file when reaching his determination that Mr. Gardin had had diabetes during service." *Gardin*, 2009 WL 1006160, at *1. The Veterans Court's analysis is contrary to law and statute.

Congress expressly permits veterans seeking service-connected disability benefits to submit reports from private physicians:

> For purposes of establishing any claim for benefits . . . , a report of a medical examination administered by a private physician . . . may be accepted

without a requirement for confirmation by an examination by a physician employed by the Veterans Health Administration if the report is sufficiently complete to be adequate for the purpose of adjudicating such claim.

38 U.S.C. § 5125. In addition, the Secretary has defined "competent medical evidence" to mean, among other things, "evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions." 38 C.F.R. § 3.159(a)(1) (2009). Accordingly, neither the statute nor the regulation requires that a private physician review the veteran's medical service record before his or her opinion may qualify as competent medical evidence.

The Veterans Court's own precedent similarly prohibits discounting a private physician's report simply because the opining physician did not review the veteran's medical service record. In *Nieves-Rodriguez v. Peake*, the Veterans Court explicitly held that "a private medical opinion may not be discounted solely because the opining physician did not review the claims file." 22 Vet. App. 295, 304 (2008). The Veterans Court noted that a review of the veteran's service medical records may have "significance to the process of formulating a medically valid and well-reasoned opinion," but refused to adopt a categorical rule excluding all private medical reports that did not include a review of the veteran's service medical records. *Id.* In this case, the Board discounted Dr. Sexton's report simply because there was no evidence that he reviewed Mr. Gardin's service medical records. The Veterans Court's approval of the Board's analysis is contrary to its decision in *Nieves-Rodriguez*.

On appeal, the Secretary argues that Mr. Gardin misreads the Board's and Veterans Court's decisions. Accord-

ing to the Secretary, the Board discounted Dr. Sexton's opinion because it relied solely on Mr. Gardin's statements, which the Board found unreliable. While the Board did note that Dr. Sexton had not reviewed the medical service records, the Secretary argues it did so only to support its conclusion that Dr. Sexton relied solely on Mr. Gardin's statements. The Secretary further contends that this distinction was recognized by the Veterans Court and its decision to affirm the Board's analysis rested upon the distinction. We disagree.

The Veterans Court expressly stated that Dr. Sexton's opinion was discounted because he "did not review the claims file when reaching his determination that Mr. Gardin had had diabetes during service." *Gardin*, 2009 WL 1006160, at *1. The Veterans Court discounted *other* medical reports because they were "based on Mr. Gardin's statements or were inconsistent with the evidence as a whole," but it never faulted Dr. Sexton's report for relying on Mr. Gardin's statements. *Id.*

An objective reading of the Veteran Court's opinion reveals that, contrary to law and statute, the Veterans Court discounted Dr. Sexton's opinion merely because there was no evidence that he reviewed Mr. Gardin's medical service record. *See Gardin*, 2009 WL 1006160, at *1. The Veterans Court engaged in no "further discussion or analysis of [Dr. Sexton's] opinion" and did not "explain[] why a review of the claims file was necessary." *Nieves-Rodriguez*, 22 Vet. App. at 305 (alterations added). Such a per se rule of law is contrary to 38 U.S.C. § 5125, 38 C.F.R. § 3.159(a)(1), and the Veterans Court's own precedent in *Nieves-Rodriguez*. Therefore, the Veterans Court committed legal error by discounting Dr. Sexton's opinion merely because there was no evidence that he reviewed Mr. Gardin's medical service record.

We next address Mr. Gardin's argument that the Veterans Court erroneously interpreted 38 U.S.C. §§ 1154(a), 5107(b) and 38 C.F.R. §§ 3.159(a)(2), 3.303(a), 3.307(b) to require contemporaneous medical evidence before considering lay evidence credible. The Veterans Court approved the Board's decision to discount Mr. Gardin's lay evidence because "they were based on [Mr. Gardin's] statements, were vague, and were not consistent with the evidence as a whole." *Gardin*, 2009 WL 1006160, at *1. The Veterans Court correctly affirmed the Board's decision regarding this issue.

Congress requires the Secretary to promulgate "provisions in effect requiring that in each case where a veteran is seeking service-connection for any disability due consideration shall be given to . . . all pertinent medical and lay evidence." 38 U.S.C. § 1154(a). Moreover, Congress has instructed that "[t]he Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary." *Id.* § 5107(b).

Pursuant to this authority, the Secretary has issued regulations governing lay and medical evidence. Under 38 C.F.R. § 3.307(b), "[t]he factual basis [for establishing a chronic disease] may be established by medical evidence, competent lay evidence or both. . . . Lay evidence should describe the material and relevant facts as to the veteran's disability observed within such period, not merely conclusions based upon opinion." Moreover, each disabling condition for which a veteran seeks service connection "must be considered on the basis of . . . all pertinent medical and lay evidence." *Id.* § 3.303(a); *see also id.* § 3.159(a)(2) ("Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person.").

This court has interpreted the above statutes and regulations to mean that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." *Jandreau v. Nicholson*, 492 F.3d 1372, 1377 (Fed. Cir. 2007). In short, Mr. Gardin is correct that the Board may not require contemporaneous medical evidence as a prerequisite to considering lay evidence credible. *See Buchanan v. Nicholson*, 451 F.3d 1331, 1336 (Fed. Cir. 2006) ("[T]he Board improperly determined that the lay statements lacked credibility merely because they were not corroborated by contemporaneous medical records."). Nevertheless, "the Board, as a fact finder, is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself, i.e., because of possible bias, conflicting statements, etc." *Id.* at 1337.

Here, the Board did not require contemporaneous medical evidence as a prerequisite to considering Mr. Gardin's lay evidence credible. Rather, the Board found the lay statements not credible "because they are in direct contradiction to the medical evidence." J.A. 215. The Board opined that "[t]he statements from [Mr. Gardin's] friends and family are too vague and inconsistent with the clearly-documented medical evidence to be deemed more credible, competent[,] or reliable than the medical evidence." J.A. 216 (alterations added). In turn, the Veterans Court simply reiterated the Board's basis for discrediting the lay testimony from Mr. Gardin's friends and family. Specifically, the Veterans Court explained that the Board discounted "the lay testimony of Mr. Gardin's friends and family because they were based on his statements, were vague, and were not consistent with

the evidence as a whole." *Gardin*, 2009 WL 1006160, at *1.

Neither the Board nor the Veterans Court required contemporaneous medical evidence as a prerequisite to considering Mr. Gardin's lay evidence credible. Instead, they acted within their proper roles. The Board, as fact-finder, had the obligation to determine whether Mr. Gardin's lay evidence was credible; the Board concluded it was not. The Veterans Court then reviewed this fact-finding and found it was not clearly erroneous. *Id.* At no point did either body interpret 38 U.S.C. § 1154(a) or any other related statutes and regulations to require contemporaneous medical evidence as a prerequisite to considering lay evidence credible. Whether the Veterans Court was correct in affirming the Board's credibility determination is a question of fact beyond this court's jurisdiction. *See* 38 U.S.C. § 7292(d)(2). Accordingly, we conclude that the Veterans Court did not commit legal error when it affirmed the Board's determination that Mr. Gardin's lay evidence was not credible.

CONCLUSION

For the foregoing reasons, we vacate the judgment of the Veterans Court and remand to the Veterans Court for further proceedings consistent with this opinion.

**VACATED and REMANDED**