﻿Citation Nr: AXXXXXXXX
Decision Date: 02/25/19 Archive Date: 02/25/19

DOCKET NO. 181129-1370
DATE: February 25, 2019

ORDER

Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), is denied.

FINDING OF FACT

The Veteran has not been shown to have a psychiatric disorder that manifested in service or a psychosis that manifested within one year of his active service. The evidence also does not show that his PTSD is related to his military service or a verified stressor.

CONCLUSION OF LAW

An acquired psychiatric disorder was not incurred in active service and may not be presumed to have been so incurred. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 4.125 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty from October 1989 to March 1991. 

This case comes before the Board of Veterans’ Appeals (Board) on appeal from a January 2017 rating decision.

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the August 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Evidence was added to the claims file during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. See Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, § 2(w)(1), 131 Stat. 1105, 1114 (2017). The Veteran may file a Supplemental Claim and submit or identify this evidence. See § 2(i)(1), 131 Stat. at 1109. If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

Law and Analysis

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that “the Board’s obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board.”); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty in active military, naval, or air service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

In addition, for veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including psychosis, are presumed to have been incurred in service if they manifested to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307(a), 3.309(a). 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third elements of service connection is through a demonstration of continuity of symptomatology. However, 38 C.F.R. § 3.303(b) applies to only those chronic diseases listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 38 U.S.C. § 1101. With respect to the current appeal, this list includes psychosis. See 38 C.F.R. § 3.309(a).

For the showing of a chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word “chronic.” Continuity of symptomatology after discharge is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. 38 C.F.R. § 3.303(b); see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic as per 38 C.F.R. § 3.309(a)).

Service connection for PTSD has unique evidentiary requirements. It generally requires: (1) medical evidence diagnosing the condition; (2) credible supporting evidence that the claimed in-service stressor actually occurred; and (3) medical evidence of a link between current symptomatology and the claimed in-service stressor. 38 C.F.R. § 3.304 (f). See also Cohen v. Brown, 10 Vet. App. 128 (1997). Diagnoses of PTSD must be rendered in accordance with the diagnostic criteria for the condition set forth in the Fourth Edition of the American Psychiatric Association’s Diagnostic and Statistical Manual of Mental Disorders (DSM-IV). See 38 C.F.R. § 4.125 (noting that VA has adopted the nomenclature of the DSM-IV). Section 4.125(a) has recently been revised to require that diagnoses conform to the updated, Fifth edition of the DSM (DSM-5) for all claims that were received by VA or were pending before the AOJ on or after August 4, 2014. See 79 Fed. Reg. 149, 45094 (August 4, 2014).

If VA determines either that the veteran did not engage in combat with the enemy or that the veteran did engage in combat, but that the alleged stressor is not combat related, the veteran’s lay testimony, by itself, is not sufficient to establish the occurrence of the alleged stressor. Instead, the record must contain credible supporting evidence that corroborates the veteran’s testimony or statements. 38 C.F.R. § 3.304 (f); Stone v. Nicholson, 480 F.3d 1111 (Fed. Cir. 2007); Cohen v. Brown, 10 Vet. App. 128, 147 (1997); Moreau v. Brown, 9 Vet. App. 389, 395 (1996).

Effective July 13, 2010, if a stressor claimed by a veteran is related to the veteran’s fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of PTSD and that the veteran’s symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of the veteran’s service, the veteran’s lay testimony alone may establish the occurrence of the claimed in-service stressor. For purposes of this paragraph, “fear of hostile military or terrorist activity” means that a veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the veteran’s response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror. See 75 Fed. Reg. 39843, 39852 (July 13, 2010) and 75 Fed. Reg. 41092 (July 15, 2010) (now codified at 38 C.F.R. § 3.304 (f)(3)).

In considering the evidence of record under the laws and regulations as set forth above, the Board finds that the Veteran is not entitled to service connection for an acquired psychiatric disorder, to include PTSD.

In a November 1990 service treatment record, the Veteran underwent a psychological evaluation subsequent to a commander directed mental health evaluation. The examiner noted that the reasons for the referral could have been due to an off-duty situation. The Veteran was observed to be alert, oriented, and mildly histrionic, but he did not show any signs of serious thought disorder. Instead, the examiner noted that the Veteran had mild personality disorder traits. 

In December 1990, the Veteran was hospitalized in the psychiatric unit after a suicide attempt, which occurred after a physical altercation the Veteran had with his girlfriend. The hospital inpatient record noted diagnoses of anticholinergic overdose in suicide gesture, adjustment disorder with mixed disturbance of emotion, and explosive intermittent disorder and episodic dyscontrol.

In a January 1991 service treatment record following the Veteran’s hospitalization, the examiner noted that the Veteran admitted to arguing with and pushing his girlfriend. The Veteran also admitted that his suicide attempt was spontaneous and that he had worked through issues with his girlfriend, whom the examiner noted was involved in a prior incident. The Veteran denied having depression prior to or after the incident and admitted that a build-up of stress was a factor in the incident. The Veteran denied having any suicidal ideation. The examiner recommended a temporary decertification pending completion of a second commander directed evaluation, and advised the Veteran regarding his opinion pertaining to the unhealthy nature of his relationship.

A February 1991 service treatment record noted that the Veteran had undergone additional testing due to requests from his commander with regard to work concerns. The examiner noted that the request preceded the Veteran’s assault and suicide incident. The results of the testing showed that the Veteran had strong characterological tendencies, such as immaturity, impulsivity, underlying hostility and aggression, rigidity, and narcissistic features. The Veteran was diagnosed with a personality disorder not otherwise specified. 

In a February 1991 evaluation completed by J.M. (initials used to protect privacy), the Veteran was diagnosed with intermittent explosive disorder and a personality disorder not otherwise specified. The examiner noted that these features were long-term and significant enough to impair reliability as well as suitability to military service. The examiner also noted that the Veteran had a chronic tendency to lie and that he had poor abilities in dealing with stress. In addition, the examiner noted that there were a number of inconsistencies in the Veteran’s account of the assault and his suicide attempt, which raised questions of whether an attempt did occur. The Veteran also showed no interest in attending therapy when offered. In a separate February 1991 service treatment record, the Veteran was permanently decertified from performing certain duties due to non-medical reasons.

In the Veteran’s February 1991 separation examination, there was a note to reference the Veteran’s psychological evaluation, which is likely the evaluation completed by J.M. In his February 1991 report of medical history, the Veteran denied having depression or excessive worry, as well as any nervous trouble.

March 1991 service personnel records noted that the Veteran was discharged from service because of a personality disorder which significantly impaired his ability to function within the Air Force. The record referenced the psychiatric evaluation performed by J.M., which found that the Veteran’s conduct was incompatible with continued service within the military. The record also noted that the Veteran’s personality disorder probably contributed to the Veteran’s assault on his girlfriend.

Following service, in a June 2016 statement, the Veteran indicated that he had PTSD as a result of an incident taking place sometime from February to March 1990. The Veteran reported that he was driving down Arthur Ray Teague Parkway when a black car pulled up next to him with two white men waving guns. He reported that he sped away, but heard gunfire. He then reported that he headed back to his base where he reported the incident and later went into counseling with a psychiatrist. The Veteran thought this event may have been terrorist-related.

During an October 2016 VA examination, the Veteran reported the in-service stressor as being the incident that he claims took place in 1990 when the black car pulled up next to him. He also reported that when he was sent to Air Base Ground Defense training during service and became fearful that he was not prepared to be in a combat situation. He reported that this may have caused the beginning of his fears and trauma of the military. The Veteran denied ever being deployed or in combat. The examiner stated that it was at least as likely as not that the Veteran’s PTSD was incurred in or caused by service. In support of the conclusion, the examiner noted that the Veteran had reported that his symptoms began while in service and that he had ongoing symptoms since then.

In a November 2016 statement, the Veteran reported the incidents described during the October 2016 VA examination. He also indicated that the incident caused him to break down, and he snapped, injured his girlfriend, and tried to commit suicide. 

In a November 2016 addendum VA opinion, the October 2016 VA examiner issued a different opinion indicating that there was no evidence to suggest that the diagnosis of PTSD is related to or due to a personality disorder or intermittent explosive disorder diagnosed in service. She indicated that it was less likely than not that the Veteran’s PTSD was related to mental conditions found during service. In support of her conclusion, the examiner noted that the stressors reported had not been verified and that the Veteran’s intermittent explosive disorder and personality disorder were due to problems that the Veteran had with his girlfriend during service.

In January 2017, VA issued a formal finding that the information required to corroborate the stressful events described by the Veteran was insufficient to send to the Joint Services Records Research Center (JSRRC) and was insufficient to allow for meaningful research of Marine Corps or National Archives and Records Administration records. The January 2017 statement also noted that the Veteran’s reported stressors could not be corroborated and that his lay statement was insufficient to establish the stressor.

As noted above, the evidence of record does not warrant a grant of service connection for an acquired psychiatric disorder. As a preliminary matter, the evidence does not show that the Veteran had a psychiatric disorder that manifested in service or a psychosis that manifested within one year of separation. Indeed, service treatment records show that the Veteran was repeatedly diagnosed with personality disorder; however, he denied having depression. At the time of his separation from service, he also denied having nervous trouble. 

The evidence of record also does not establish continuity of symptomatology. 38 C.F.R. § 3.303(b). To the extent that the Veteran had asserted that there has been a continuity of symptomatology since service, the Board finds such assertions are not reliable or credible. As noted above, the February 1991 separation examination was normal, and he denied having depression, excessive worry, and nervous trouble. As such, there was actually affirmative evidence showing that he did not have symptoms at the time of his separation. There is also no evidence showing that the Veteran sought treatment for any psychiatric disorder until several years after service. Rather, the only medical evidence of a psychiatric disorder after service is the October 2016 VA examination, which was performed several years after the Veteran separated from service. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). 

The Board also finds that the most probative evidence weighs against a finding that the Veteran’s PTSD is related to service. The November 2016 VA examiner reviewed the claims file and considered the Veteran’s medical history. She also conducted a mental examination with testing and determined that the Veteran’s PTSD was unrelated to his psychiatric diagnoses in service. She also did not find that the Veteran had any other psychiatric disorders. 

With regard to lay evidence, lay persons are not categorically incompetent to speak on matters of medical diagnosis or etiology. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). The Board must consider the type of condition specifically claimed and whether it is readily amenable to lay diagnosis or probative comment on etiology. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). In this regard, the Federal Circuit held that “PTSD is not the type of medical condition that lay evidence . . . is competent and sufficient to identify.” Young v. McDonald, 766 F.3d 1348, 1352-53 (Fed. Cir. 2014). Regardless, the Board acknowledges the Veteran is competent to report psychiatric symptoms after service. See 38 C.F.R. § 3.159 (a)(2); Jandreau, 492 F.3d at 1377 (discussing that Veteran is competent to report a contemporaneous medical diagnosis); Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (discussing general competency of a Veteran to report psychiatric symptoms). 

In this case, the Board finds that the Veteran’s lay statements are less probative than the November 2016 VA examiner’s finding that the Veteran’s PTSD was not incurred in or caused by service. The Federal Circuit has held that the Board can favor competent medical evidence over lay statements offered by the Veteran, as long as the Board does not deem the lay evidence categorically incompetent nor improperly requires a medical opinion as the sole way to prove causation. King v. Shinseki, 700 F.3d 1339, 1344 (2012). Moreover, although the Veteran is competent to describe his psychiatric symptoms, by regulation, the etiology of PTSD must be established by medical evidence, according to 38 C.F.R. § 3.304 (f). 

In addition, the Veteran’s lay statements have less probative value because they are not credible due to their inconsistencies with the contemporaneous record. See Gardin v. Shinseki, 613 F.3d 1374, 1379 (Fed. Cir. 2010) (the Board acted appropriately in its fact-finding role in its determination that lay statements of record were not credible because they are “in direct contradiction” to other evidence of record); Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995). In this regard, contemporaneous evidence can have greater probative value than inconsistent testimony provided by the claimant at a later date. Curry v. Brown, 7 Vet. App. 59, 68 (1994). The Veteran indicated that he reported the incident involving the black car and that he sought counseling after the incident, yet a review of his service records shows no mention of this incident. Rather, service records clearly establish that the Veteran had to undergo psychiatric evaluations for the incident that occurred with his girlfriend (as opposed to incident involving a car) and that he specifically denied wanting therapy. 

The Board has also considered whether the Veteran’s PTSD claim raised the issue of entitlement to service connection for any other acquired psychiatric disorder in addition to PTSD. See Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009) (holding that the scope of a mental health disability claim includes any mental disability that may reasonably be encompassed by the claimant’s description of the claim, reported symptoms, and the other information of record). The Board notes that the Veteran was repeatedly diagnosed with a personality disorder during service. However, the October 2016 VA examination only noted that the Veteran had a current diagnosis of PTSD, and there is no evidence of any other current psychiatric disorder. Moreover, personality disorders are disorders that are by definition preexisting disorders, considered a congenital or developmental defect, and are not subject to service connection under 38 C.F.R. § 3.303 (c) (see also 38 C.F.R. §§ 4.9, 4.127) in the absence of superimposed disease or injury during service. VAOPGCPREC 82-90.

The Board also notes that the Veteran’s attorney asserted in a June 2017 statement that the Veteran’s reports of his stressor do not require corroboration because they were related to a fear of hostile military or terrorist activity. The attorney noted that the October 2016 VA examiner noted that the incident regarding the car was related to the Veteran’s fear of hostile military or terrorist activity. However, a stressor that is claimed to be related to hostile military or terrorist activity must also be consistent with the places, types, and circumstances of the Veteran’s service. 38 C.F.R. § 3.304(f). In this regard, while the Veteran claimed that he thought the incident was related to terrorist activity, he was never deployed, and he specifically denied engaging in combat during service. In addition, as noted above, the Veteran’s lay statements are not credible. Thus, because the Veteran’s assertions of hostile military and terrorist activity are not consistent with the circumstances of his service, the provision pertaining to hostile military and terrorist activity is not applicable. 

Moreover, as noted above, the alleged in-service stressor has not been otherwise verified. Thus, to the extent that the October 2016 VA examiner related the Veteran’s current PTSD to the stressor, service connection cannot be granted due to the lack of a verified stressor. Indeed, in a November 2016 opinion, the same VA examiner acknowledged that the stressor was not verified and opined that his PTSD was not related to his military service.

In summary, the Board finds that the most probative evidence shows that the Veteran’s PTSD did not manifest in service and is not otherwise related to service. Therefore, the Board finds that the preponderance of the evidence is against the claim for service connection for an acquired psychiatric disorder, to include PTSD. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

 

J.W. ZISSIMOS

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD J. Saikh, Associate Counsel